# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

◆

STEVE MARSHALL,
in his official capacity as Attorney General of the State of Alabama, et al.,
*Defendants-Appellants*,

v.

MICHAEL MCGUIRE, et al.,
*Plaintiffs-Appellees*.

◆

On Appeal from the United States District Court
for the Middle District of Alabama
Case No. 2:19-cv-00174-WKW-JTA

## BRIEF OF DEFENDANTS-APPELLANTS ATTORNEY GENERAL MARSHALL AND SECRETARY HAL TAYLOR

Steve Marshall
  *Attorney General*

Edmund G. LaCour Jr.
  *Solicitor General*

James W. Davis
  *Deputy Attorney General*

Brenton M. Smith
Benjamin M. Seiss
  *Assistant Attorneys General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL 36130
Phone: (334) 242-7300
Edmund.LaCour@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
*Counsel for Defendants-Appellants
Attorney General Marshall & Secretary
Taylor*

AUGUST 7, 2024

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1(a) and 26.1-2, the undersigned counsel certifies that the following listed persons and parties may have an interest in the outcome of this case:

1. Adams, Hon. Jerusha T. – Magistrate Judge for the U. S. District Court for the Middle District of Alabama;

2. Alabama Attorney General's Office – Counsel for Defendants-Appellants;

3. Alabama Law Enforcement Agency ("ALEA") – State agency directed by Defendant-Appellant Secretary Taylor;

4. Chynoweth, Brad A. – Former counsel for Defendants (terminated);

5. Cordner, Susanne E. – Counsel for Plaintiffs-Appellees;

6. Davis, James W. – Counsel for Defendants-Appellants;

7. J.E.B. – Plaintiff-Appellee (pseudonym);

8. Jones, Jeremy – Former Defendant (terminated);

9. K.L.L. – Plaintiff-Appellee (pseudonym);

10. LaCour, Edmund G. – Counsel for Defendants-Appellants;

11. Marshall, Attorney General Steven T. – Defendant-Appellant;

12. McGuire & Associates, LLC – Counsel for Plaintiffs-Appellees;

13. McGuire, Joseph M. – Counsel for Plaintiffs-Appellees;

14. McGuire, Michael A. – Plaintiff-Appellee;

15. McKay, Charles A. – Counsel for Defendants;

16. Mink, Richard D. – Counsel for Defendants;

17. Seiss, Benjamin M. – Counsel for Defendants-Appellants;

18. Smith, Brenton M. – Counsel for Defendants-Appellants;

19. Taylor, ALEA Secretary Hal – Defendant-Appellant; and,

20. Watkins, Hon. William Keith – District Judge for the U. S. District Court for the Middle District of Alabama.

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Respectfully submitted this 7th day of August 2024.

_s/_ Brenton M. Smith
Brenton M. Smith
  _Assistant Attorney General_

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: 334.242.7300
Facsimile: 334.353.8400
Brenton.Smith@AlabamaAG.gov

**_Counsel for Defendants-Appellants Attorney General Marshall & Secretary Taylor_**

## STATEMENT REGARDING ORAL ARGUMENT

The State Defendants respectfully request oral argument in this case. Based on a free speech claim brought by three convicted sex offenders, the district court ordered universal relief that it recognized would "necessarily have … harmful effects" by making it possible for "dangerous people who constitutionally can be prevented from living under the same roof with minors" to live under the same roof with minors. Doc. 138 at 110. That was a serious error, both in terms of legal analysis and practical consequences for vulnerable children. Oral argument will help ensure that these weighty issues are fully vetted by this Court.

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................................C-1

Statement Regarding Oral Argument .............................................................i

Table of Contents ........................................................................................ ii

Table of Authorities ....................................................................................iv

Introduction ..................................................................................................1

Statement of Jurisdiction...............................................................................3

Statement of the Issues..................................................................................4

Statement of the Case....................................................................................5

    A.   Alabama Law Regulates Where Convicted Sex Offenders May Reside to Limit Access to Potential Victims—Especially Children.........................................................................5

    B.   Plaintiffs Are Convicted Sex Offenders. .......................................6

    C.   Plaintiffs Sue Seeking Facial Invalidation of Alabama's Sex Offender Residency Provision. ......................................................8

Standard of Review......................................................................................10

Summary of the Argument...........................................................................11

Argument.....................................................................................................13

    I.   The Residency Provision does not trigger First Amendment scrutiny because it targets nonexpressive activity.................................13

    II.   Plaintiffs have failed to show from the text of the law and actual fact that § 15-20A-11 is substantially overbroad. ...............................15

        A.   The Residency Provision does not reach Plaintiffs' edge cases. ..........................................................................................17

B.  Even if the Residency Provision reaches Plaintiffs' edge cases, they failed to show—from the text and from fact—that substantial overbreadth exists. ......................................................24

C.  If the scope of the Residency Provision affects the outcome of Plaintiffs' claims, this Court should certify a question to the Alabama Supreme Court. .........................................................30

III.  The district court improperly granted relief on an unpleaded and meritless "narrow tailoring" claim. ......................................................32

A.  Plaintiffs did not properly plead a "narrow tailoring" claim. .......33

B.  The First Amendment does not apply, but the Residency Provision clears *O'Brien*'s "relatively lenient" standard regardless. ...................................................................................39

C.  Finding the Residency Provision facially unconstitutional was inappropriate. .........................................................................44

IV.  The district court's permanent equitable relief swept too broadly and improperly failed to consider whether Plaintiffs satisfied the equitable factors. ...................................................................................46

Conclusion ........................................................................................................51

Certificate of Compliance .............................................................................53

Certificate of Service .....................................................................................54

## Cases

*Abbott v. Perez,*
  138 S. Ct. 2305 (2018).......................................................................47

*Ala. Educ. Ass'n v. State Superintendent of Educ.,*
  746 F.3d 1135 (11th Cir. 2014) ...........................................................30

*Alaska Airlines, Inc. v. Brock,*
  480 U.S. 678 (1987) ............................................................................50

*Arcara v. Cloud Books, Inc.,*
  478 U.S. 697 (1986) ....................................................... 1, 2, 11, 13-15

*Arizonans for Official English v. Arizona,*
  520 U.S. 43 (1997) ........................................................................ 23, 32

*Babbitt v. United Farm Workers Nat'l Union,*
  442 U.S. 289 (1979) ............................................................................27

*Barmapov v. Amuial,*
  986 F.3d 1321 (11th Cir. 2021) ........................................ 34, 35, 38, 39

*Blue Cross & Blue Shield of Ala., Inc. v. Nielsen,*
  116 F.3d 1406 (1997) .................................................................... 24, 30

*Broad. Music, Inc. v. Evie's Tavern Ellenton, Inc.,*
  772 F.3d 1254 (11th Cir. 2014)....................................... 10, 13, 46

*Broadrick v. Oklahoma,*
  413 U.S. 601 (1973) ............................................................................16

*Cagle v. Bruner,*
  112 F.3d 1510 (11th Cir. 1997)...........................................................10

*CBS Broad., Inc. v. EchoStar Commc'ns Corp.,*
  450 F.3d 505 (11th Cir. 2006).............................................................11

*Cheshire Bridge Holdings, LLC v. City of Atlanta,*
  15 F.4th 1362 (11th Cir. 2021)............................................................22

*Chickasaw Nation v. United States,*
  534 U.S. 84 (2001) ........................................................................ 20, 21

*City of Dallas v. Stanglin*,
490 U.S. 19 (1989) .......................................................1, 29

*City of Erie v. Pap's A.M.*,
529 U.S. 277 (2000) ..................................................... 40, 41

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ...........................................................27

*Clark v. Cmty. for Creative Non-Violence*,
468 U.S. 288 (1984) ...........................................................40

*Club Madonna Inc. v. City of Miami Beach*,
42 F.4th 1231 (11th Cir. 2022)............................... 1, 39, 40

*Dimmitt v. City of Clearwater*,
985 F.2d 1565 (11th Cir. 1993).........................................23

*Doe #1 v. Marshall*,
2018 WL 1321034 (M.D. Ala. Mar. 14, 2018) ..................31

*Doe v. Kearney*,
329 F.3d 1286 (11th Cir. 2003).........................................48

*Duncan v. Walker*,
533 U.S. 167 (2001) ...........................................................19

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ...........................................................10

*Eknes-Tucker v. Governor of Ala.*,
80 F.4th 1205 (11th Cir. 2023)..........................................48

*FF Cosmetics FL, Inc. v. City of Miami Beach*,
866 F.3d 1290 (11th Cir. 2017)................................... 26, 29

*First Vagabonds Church of God v. City of Orlando*,
638 F.3d 756 (11th Cir. 2011)...........................................41

*Ga. Advoc. Off. v. Jackson*,
4 F.4th 1200 (11th Cir. 2021)............................................51

*Gilmour v. Gates, McDonald & Co.*,
382 F.3d 1312 (11th Cir. 2004)..........................................36

v

*Green v. Mansour*,
474 U.S. 64 (1985) ............................................................46

*Henry v. Marshall*,
45 F.4th 1272 (11th Cir. 2022)........................................22

*In re Shek*,
347 F.3d 770 (11th Cir. 2020) .........................................18

*Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*,
162 F.3d 1290 (11th Cir. 1998) ........................................39

*Labrador v. Poe ex rel. Poe*,
144 S. Ct. 921 (2024)........................................................51

*Lady J. Lingerie v. City of Jacksonville*,
176 F.3d 1358 (11th Cir. 1999)........................................40

*LeFrere v. Quezada*,
582 F.3d 1260 (11th Cir. 2009) ................................. 23, 30

*Lichtenstein v. Hargett*,
83 F.4th 575 (6th Cir. 2023) ...................................... 40, 41

*McGuire v. Marshall*,
50 F.4th 986 (11th Cir. 2022)...........................................19

*Merritt v. Dillard Paper Co.*,
120 F.3d 1181 (11th Cir. 1997) ................................. 21, 22

*Miccosukee Tribe of Indians of Fla. v. United States*,
716 F.3d 535 (11th Cir. 2013) ..........................................36

*Middlesex Cnty. Ethics. Comm. v. Garden State Bar Ass'n*,
457 U.S. 423 (1982) .................................................. 47, 48

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*,
460 U.S. 575 (1983) ........................................................14

*Mize v. Jefferson City Bd. of Educ.*,
93 F.3d 739 (11th Cir. 1996)............................................44

*Moody v. NetChoice*,
144 S. Ct. 2383 (2024)....................... 12, 16, 24, 25, 40, 45

*Mosher v. Speedstar Div. of AMCA Int'l, Inc.*,
    52 F.3d 913 (11th Cir. 1995) ...................................................... 30, 32

*N.Y. State Club Ass'n, Inc. v. City of New York*,
    487 U.S. 1 (1988) ................................................................ 15, 16, 28

*Navarette v. California*,
    572 U.S. 393 (2014) .........................................................................19

*New York v. Ferber*,
    458 U.S. 747 (1982) .........................................................................42

*Packingham v. North Carolina*,
    582 U.S. 98 (2017) ...........................................................................14

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
    781 F.3d 1245 (11th Cir. 2015) .......................................................10

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ...........................................................................25

*Pine v. City of West Palm Beach*,
    762 F.3d 1262 (11th Cir. 2014) .......................................................35

*Pittman v. Cole*,
    267 F.3d 1269 (11th Cir. 2001) .................................................. 31, 47

*Public Serv. Comm'n v. Wycoff Co.*,
    344 U.S. 237 (1952) .........................................................................46

*Rumsfeld v. F. for Acad. & Inst. Rights, Inc.*,
    547 U.S. 47 (2006) ..................................................................... 41, 42

*Samuels v. Mackell*,
    401 U.S. 66 (1971) ...........................................................................46

*Shiloh Christian Ctr. v. Aspen Specialty Ins. Co.*,
    65 F.4th 623 (11th Cir. 2023) .........................................................36

*State v. Damon McCloud*,
    CC-2019-003605.00 (Madison Cnty. Cir. Ct. 2019) .........................28

*State v. Darion Smiley*,
    DC-2019-001628.00 (Jefferson Cnty. D. Ct. 2019) .........................28

*Steffel v. Thompson,*
415 U.S. 452 (1974) ................................................................. 46, 47

*Swain v. Junior*,
958 F.3d 1081 (11th Cir. 2020) ....................................................47

*Texas v. Johnson,*
491 U.S. 397 (1989) .....................................................................40

*Turner Broad. Sys. v. FCC,*
512 U.S. 622 (1994) .....................................................................41

*United States v. Albertini*,
472 U.S. 675 (1985) ................................................................ 41, 42

*United States v. Cortez*,
449 U.S. 411 (1981) .....................................................................20

*United States v. Dean,*
635 F.3d 1200 (11th Cir. 2011) ....................................................35

*United States v. Hansen*,
599 U.S. 762 (2023) ............................................................ 25-28, 36

*United States v. Irey*,
612 F.3d 1160 (11th Cir. 2010) ....................................................48

*United States v. O'Brien*,
391 U.S. 367 (1968) ........................................................... 12, 40, 41

*United States v. Pugh*,
90 F.4th 1318 (11th Cir. 2024) ....................................................28

*United States v. Salerno*,
481 U.S. 739 (1987) .....................................................................45

*United States v. Williams,*
553 U.S. 285 (2008) ..........................................................15, 16, 28, 29

*Vibe Micro, Inc. v. Shabanets,*
878 F.3d 1291 (11th Cir. 2018) ....................................................38

*Virginia v. Hicks*,
539 U.S. 113 (2003) ...........................................................11, 14, 15

*Weiland v. Palm Beach Cnty. Sheriff's Off.,*
  792 F.3d 1313 (11th Cir. 2015) ....................................................... 34, 38

*Whole Woman's Health v. Jackson,*
  595 U.S. 30 (2021) ....................................................................27

*Wilson v. State Bar of Ga.,*
  132 F.3d 1422 (11th Cir. 1998) ....................................................27

*WM Mobile Bay Envtl. Ctr. v. City of Mobile Solid Waste Auth.,*
  972 F.3d 1240 (11th Cir. 2020) ....................................................30

*Wright v. City of St. Petersburg,*
  833 F.3d 1291 (11th Cir. 2016) ....................................... 2, 11, 13, 39

**Statutes**

28 U.S.C. § 1291 ....................................................................3

42 U.S.C. § 1983 ....................................................................3

ALA. CODE § 1-1-16 ...............................................................51

ALA. CODE § 15-20A-2 ..................................................... 1, 5, 42

ALA. CODE § 15-20A-4 ..................................................... 6, 17, 23

ALA. CODE § 15-20A-5 .............................................................49

ALA. CODE § 15-20A-10 ...........................................................19

ALA. CODE § 15-20A-11 .............................................................4, 5

ALA. CODE §§ 15-20A-23 ...........................................................5

ALA. CODE §§ 15-20A-24 ...........................................................5

LA. STAT. ANN. § 14:92(A)(7) ....................................................7

LA. STAT. ANN. § 15:541(24)(a) ................................................8

**Other Authorities**

A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF
  LEGAL TEXTS 232, 232 (2012) ...............................................20

*Conduct*, Merriam-Webster, (June 12, 2024), https://www.merriam-webster.com/dictionary/conduct...........................................................23

## Rules

*Alabama Rules of Appellate Procedure*

ALA. R. APP. P. 18 ............................................... 30, 31

*Federal Rules of Appellate Procedure*

FED. R. APP. P. 26.1 ...............................................1

FED. R. APP. P. 32...............................................53

*Federal Rules of Civil Procedure*

FED. R. CIV. P. 8(a)(2) ........................................ 34, 38

FED. R. CIV. P. 10(b)........................................ 34, 38

FED. R. CIV. P. 15 ...............................................36

**INTRODUCTION**

While it is "possible to find some kernel of expression in almost every activity a person undertakes," *City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989), "not all government action implicates the First Amendment," *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1241 (11th Cir. 2022). Were it otherwise, nearly every "criminal and civil sanction imposed through legal process" would have to satisfy "'least restrictive means' scrutiny simply because each" could "have some effect on the First Amendment activities of those subject to sanction." *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706 (1986). But the First Amendment is not implicated merely because "a thief who is sent to prison" cannot "speak in public places … because of the confinement," nor does "a civil damages award" give rise to a First Amendment claim merely because the defendant "has less money to spend on paid political announcements." *Id.* at 706. These principles should have ended Plaintiffs' claims in this case at the outset.

Alabama, like every other state and the federal government, imposes post-release restrictions on sex offenders, as part of the Alabama Sex Offender Registration and Community Notification Act ("ASORCNA"). It does so to protect the public—and especially children—from the threat of recidivism. *See* ALA. CODE § 15-20A-2. As relevant here, its Residency Provision limits convicted sex offenders from living within 2,000 feet of schools, daycares, and camps or from living or

conducting overnight visits with minors outside their nuclear family. *See id.* § 15-20A-11(a), (d). However, the district court declared this Residency Provision facially invalid under the First Amendment, reasoning that it restricted too many forums for expression.

This was error. Although the Residency Provision—like all laws—collaterally burdens some expression, "First Amendment scrutiny 'has no relevance to [laws] directed at imposing sanctions on nonexpressive activity.'" *Wright v. City of St. Petersburg*, 833 F.3d 1291, 1298 (11th Cir. 2016) (quoting *Arcara*, 478 U.S. at 707). Regardless, the Residency Provision withstands facial First Amendment scrutiny under either the overbreadth claim (that Plaintiffs pleaded) or the "narrow tailoring" claim (that they didn't). The district court's error was compounded by its adopting an interpretation of the Residency Provision much broader than that espoused or enforced by Alabama officials, its failure to consider the ordinary prerequisites for equitable relief, and its failure to limit the scope of its judgment to only the limited portions of the law it found offensive.

The order below, in the name of the First Amendment, would permit non-party convicted child rapists to reside with children. *See* Doc.138, Doc.139. That incredible conclusion cannot stand. As explained further below, the district court erred both in refusing to enter summary judgment for Defendants on these First Amendment Claims and in entering summary judgment for Plaintiffs.

At a minimum, the Court abused its discretion and exceeded its authority by entering relief barring any enforcement of the Residency Provision. First, the court's holding as to the Residency Provision turned on the purported overbreadth if one sentence of the provision were applied as Plaintiffs feared it would be applied (and Defendants proved it never was so applied). Given ASORCNA's strong severability clause, the court should have limited its relief to only that aspect of the Residency Provision. Second, the court had before it only three plaintiffs, not a class action. Any relief should have been limited to them alone rather than expressly extending to "dangerous people who constitutionally can be prevented from living under the same roof with minors." Doc. 138 at 110. As both a matter of equity and Article III authority, the court's remedy goes too far and unlawfully puts untold numbers of Alabama children at risk.

This Court should accordingly reverse.

## STATEMENT OF JURISDICTION

Plaintiffs sued in district court seeking relief under 42 U.S.C. § 1983. Doc. 1. The district court exercised jurisdiction under 28 U.S.C. § 1331 and entered final judgment on May 23, 2024, granting summary judgment to Plaintiffs in part and to Defendants on all other claims. Docs. 138, 139. Defendants timely filed their notice of appeal on May 28, 2024. Doc. 140. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Alabama limits where convicted sex offenders can live. Relevant here, Alabama law (with some exceptions) prohibits a sex offender from (1) living within 2,000 feet of a school, daycare, or residential camp; and (2) living or spending the night with a minor outside their nuclear family. *See* ALA. CODE § 15-20A-11(a), (d). Plaintiffs—three convicted sex offenders—challenged the Residency Provision on First Amendment overbreadth grounds, contending that it limits too much expressive activity. The district court agreed, entering summary judgment in their favor on both this overbreadth claim and on an unpleaded, so-called "traditional First Amendment tailoring challenge." *See* Docs. 138, 139. It then proceeded to enter declaratory and injunctive relief as to Plaintiffs immediately and facial declaratory relief to take effect September 1, 2024. The questions presented are:

1. Does the Residency Provision—which targets nonexpressive residential conduct of sex offenders—implicate First Amendment scrutiny?

2. Did Plaintiffs carry their heavy burden to show from both law and actual fact that the Residency Provision is substantially overbroad?

3. Can an unpleaded "narrow tailoring" claim disprove that the Residency Provision furthers a substantial government interest that is unrelated to expression?

4. Did the district court err in granting facial equitable relief without considering the ordinary prerequisites to entering equitable relief?

5. Did the district court abuse its discretion in entering equitable relief broader than necessary to remedy Plaintiffs' purported constitutional violations?

### A. Alabama Law Regulates Where Convicted Sex Offenders May Reside to Limit Access to Potential Victims—Especially Children.

Like every other state and the federal government, Alabama imposes civil restrictions on convicted sex offenders to further its interests in protecting the public—particularly children—from recidivating sex offenders. *See* ALA. CODE § 15-20A-2. Enacted as part of ASORCNA, the Residency Provision limits both where and with whom convicted sex offenders may live. ALA. CODE § 15-20A-11. As relevant here, Alabama law (with limited exceptions)[1] prohibits adult sex offenders from (1) establishing or maintaining a residence within 2,000 feet of a school, childcare facility, or resident camp facility, *id.* (a); or (2) residing or conducting an overnight visit with a minor, *id.* (d).

The Residency Provision incorporates ASORCNA's definition of both "Overnight Visit" and "Reside":

> OVERNIGHT VISIT. Any presence between the hours of 10:30 p.m. and 6:00 a.m."
>
> ….

---

[1] For example, certain sex offenders may petition for relief from ASORCNA's provisions, *see, e.g.*, ALA. CODE §§ 15-20A-23, -24. Additionally, the statute contains a grandfather provision that provides that "[c]hanges to property within 2,000 feet of a registered address of an adult sex offender which occur after the adult sex offender establishes residency" do not cause violations of the statute ("unless the sex offender has been released or convicted of a new offense after establishing residency"). ALA. CODE § 15-20A-11(c).

RESIDE. To be habitually or systematically present at a place. Whether a person is residing at a place shall be determined by the totality of the circumstances, including the amount of time the person spends at the place and the nature of the person's conduct at the place. The term reside includes, but is not limited to, spending more than four hours a day at the place on three or more consecutive days; spending more than four hours a day at the place on 10 or more aggregate days during a calendar month; or spending any amount of time at the place coupled with statements or actions that indicate an intent to live at the place or to remain at the place for the periods specified in this sentence. A person does not have to conduct an overnight visit to reside at a place.

ALA. CODE § 15-20A-4(14), (20).

## B. Plaintiffs Are Convicted Sex Offenders.

All three Plaintiffs—Michael McGuire, JEB, and KLL[2]—are violent sex offenders whose prior convictions require them to comply with ASORCNA. Plaintiff Michael McGuire is a self-described "rapist hairdresser," Doc. 120-1 at 24:14-19, who (after moving from Alabama to Colorado and entering a bigamist marriage) raped his Colorado wife at knifepoint, Doc. 120-6 at 13, 54. McGuire was accordingly convicted in Colorado of first-degree sexual assault as well as second-degree assault (with the knife and a wine bottle) and menacing (with the knife). *Id.* Upon moving back to Montgomery, Alabama in 2010, McGuire registered as a sex offender pursuant to ASORCNA based on his Colorado conviction. Doc. 120-2 ¶¶ 24, 25.

---

[2] Plaintiffs JEB and KLL are litigating under pseudonyms.

Plaintiff JEB is a career criminal who raped another inmate while in pretrial detention on an armed robbery charge—for which he pleaded guilty to both second-degree sodomy and second-degree robbery and served over twenty years in prison. Doc. 120-7 at 80:4-19; Doc. 120-15; Doc. 120-16. He previously pleaded guilty to carnal knowledge (a predecessor crime to statutory rape), was convicted of assault with intent to murder, and racked up over a dozen other charges related to drugs, ASORCNA violations, and traffic violations. Doc. 120-13; Doc. 120-14; Doc. 120-83 at 2-3; Doc. 120-7 at 76:11-15, 78:1-4. Upon his release from prison in 2011, JEB registered as a sex offender. Doc. 120-7 at 15:4-6, 16:11-14.

Plaintiff KLL has had numerous run-ins with the law, including illicit sexual conduct with a minor. *See* Doc. 120-20 at 19-20. Between 2009 and 2011 (while living in Louisiana) he accumulated at least 10 charges for various crimes including burglary, felony theft (twice), and illegal possession of a stolen firearm. *Id.* These charges led to at least three guilty pleas—one for possession of a stolen firearm, one for attempted simple burglary, and one for a Louisiana equivalent of statutory rape pursuant to La. Stat. Ann. § 14:92(A)(7). *Id.*; Doc. 120-17 at 337:16-338:18, 341:3-343. This last crime was initially brought as a charge for "RAPE/FORCIBLE SIMPLE," which was subsequently reduced to this lesser charge to which KLL pleaded guilty. Doc. 120-20 at 5-6, 29; Doc. 120-25 at 1-2. KLL admits that he knowingly had sexual intercourse with a 16-year-old girl multiple times when he

had "just gotten out of jail" at 19 years old[3] and took nude photographs of her. Doc. 120-17 at 283:13-284:7, 291:3-16, 296:11-15. Upon moving to Alabama, KLL was required to register as a sex offender based on both this conviction and his status as a sex offender in Louisiana. *See* La. STAT. ANN. § 15:541(24)(a) (categorizing a conviction pursuant to La. Stat. Ann. § 14:92(A)(7) as a sex offense).

### C. Plaintiffs Sue Seeking Facial Invalidation of Alabama's Sex Offender Residency Provision.

Plaintiffs brought this suit as an omnibus challenge seeking facial invalidation of every ASORCNA provision under various theories (based in, *inter alia*, vagueness, equal protection, compelled speech, and *ex post facto*) *see, e.g.*, Doc. 55 at 3-4; however, the only remaining issue is whether the Residency Provision violates the First Amendment, *see* Doc. 138 at 2. Count 1 of Plaintiffs' operative complaint—entitled "Overbreadth – Facial and As Applied Challenge"—claims that the Residency Provision unconstitutionally burdens too much expressive activity "and lacks proper tailoring." Doc. 88 at 59-60. Specifically, Plaintiffs contend that they are chilled from engaging in First Amendment activities because they interpret ASORCNA's Residency Provision as being triggered by their regular attendance at

---

[3] Although KLL asserted in the Second and Third Amended Complaints that he was 17 years old at the time of these incidents, Doc. 31 ¶¶ 192, 193; Doc. 72 ¶¶ 189, 190—and twice swore that this assertion was "true and correct to the best of [his] knowledge, Doc. 31-1 at 4; Doc. 72-1 at 4—he has since admitted that his sworn statements regarding his own age were neither true nor correct. Doc. 120-17 at 335:18-337:15; *see also* Doc. 88 ¶¶ 189-190; Doc. 88-1 at 4.

forums for expression. Thus, Plaintiffs claim ASORCNA violates the First Amendment as facially overbroad by prohibiting protected activity at too many places.

On May 23, 2024, the district court granted summary judgment for Plaintiffs on this claim, adopting Plaintiffs' interpretation and declaring the Residency Provision facially overbroad effective September 1, 2024. *See* Docs. 138, 139. The district court went even further, also construing the 4-word phrase "and lacks proper tailoring" within Plaintiffs' Overbreadth Count to plead a separate "tailoring claim," which it analyzed under a facial "time, place, manner" framework. Doc. 138 at 88-90 & n.37. The court found the Residency Provision facially unconstitutional under this theory as well, *id.* at 89, but entered only as-applied relief enjoining the Residency Provision's enforcement as to Plaintiffs immediately (albeit even in nonexpressive contexts), Doc. 139 at 3-4. The district court delayed its facial relief's effective date to September 1, 2024, to "provide[] time for the legislature"—which had adjourned its 2023 session two weeks prior and will not reconvene until next year—"to craft a new statute." Doc. 139 at 1.

Defendants quickly appealed and moved the district court for a stay pending resolution of that appeal. Doc. 140; Doc. 146. The district court refused on June 28, 2024. Doc. 151. Despite concluding that Defendants are "most unlikely" to succeed on the merits, the court stated that Defendants could "renew" their motion after

August 1, 2024, as to the non-parties only. Doc. 151 at 6. However, "[t]he court will not stay the relief that applies to the Plaintiffs." *Id.*

Defendants moved this Court for a stay pending appeal on July 2, 2024 and requested a ruling on that motion by August 7, 2024. This Court has not ruled on that motion as of the time Defendants file this brief.

<div align="center">

**STANDARD OF REVIEW**

</div>

This Court reviews a "grant of summary judgment *de novo*, 'draw[ing] all inferences in the light most favorable to the non-moving party." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1253 (11th Cir. 2015). Summary judgment should be granted "only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Cagle v. Bruner*, 112 F.3d 1510, 1514 (11th Cir. 1997).

"The decision to grant a permanent injunction must be based on the plaintiffs' demonstration:"

> (1) that they have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiffs and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Broadcast Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1261 (11th Cir. 2014) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

"The scope of an injunction is reviewed for abuse of discretion." *CBS Broad., Inc. v. EchoStar Commc'ns Corp.*, 450 F.3d 505, 518 n.25 (11th Cir. 2006).

## SUMMARY OF THE ARGUMENT

The district court erred in concluding that the Residency Provision facially violated the First Amendment and by entering equitable relief declaring it facially unconstitutional and thus unenforceable in every conceivable application.

*First*, the Residency Provision does not implicate First Amendment review because it targets nonexpressive residential behavior. "First Amendment scrutiny 'has no relevance to [laws] directed at imposing sanctions on nonexpressive activity.'" *Wright v. City of St. Petersburg*, 833 F.3d 1291, 1298 (11th Cir. 2016) (quoting *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986)). But under Plaintiffs' view, every prison sentence would have to meet First Amendment scrutiny because jail time "directly restricts protected First Amendment activity." *See* Stay Resp. 18. That's not the law. *See Wright*, 833 F.3d at 1296. Plaintiffs have no valid First Amendment claim, and the district court must accordingly be reversed on that threshold basis before even considering the merits of the claims themselves.

*Second*, Plaintiffs have not carried their heavy burden to show from law and fact that the Residency Provision is substantially overbroad—i.e., that the number of its unconstitutional applications substantially outweigh its constitutional ones. *See, e.g.*, *Virginia v. Hicks*, 539 U.S. 113, 122 (2003). As Defendants have argued

11

and testimony from law enforcement officials confirms, the Residency Provision does not reach Plaintiffs' fringe hypotheticals as a matter of law or fact. But even if it did, that handful of outliers does not substantially outweigh the law's legitimate sweep—preventing sex offenders from living near schools and daycares and from living or spending the night with unrelated minors. Relying on little more than fanciful hypotheticals, Plaintiffs cannot justify the "strong medicine" of a facial declaration of unconstitutionality on overbreadth grounds.

*Next*, Plaintiffs similarly have not carried their heavy burden to show that the Residency Provision is facially unconstitutional under a so-called "narrow tailoring" claim. For starters, Plaintiffs did not plead any such claim; their use of the phrase "proper tailoring" within Count 1 of their complaint did not give rise to a distinct claim and would violate this Court's shotgun pleading precedent regardless. But, even on the merits, First Amendment intermediate scrutiny requires only "that a law must further a 'substantial governmental interest' that is 'unrelated to the suppression of free expression.'" *Moody v. NetChoice*, 144 S. Ct. 2383, 2407 (2024) (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)). The only dispute here is the degree to which the Residency Provision advances the State's interests, but that's irrelevant. The district court's admission that its order will cause "some harmful effects," Doc. 128 at 100, shows that this interest would be achieved less effectively without the Residency Provision—all that intermediate scrutiny requires.

*Lastly*, the district court's grant of equitable relief and the scope of that relief was improper. The district court did not consider any of the ordinary equitable prerequisites before entering such relief. *Contra Broadcast Music*, 772 F.3d at 1261. But Plaintiffs face no irreparable harm given that the Residency Provision isn't enforced as they claim to fear. By contrast, Defendants and the public at large face significant and admitted harm if Alabama is prevented from enforcing a law that protects children and the wider public from recidivating sex offenders by limiting their access to potential victims. Regardless, the relief entered sweeps far too broadly—declaring the Residency Provision unenforceable in every application instead of in only those arising from operation of the limited parts of the law that the court found problematic.

For these reasons, this Court should reverse the district court's judgment granting Plaintiffs' motion for summary judgment and denying Defendants' motion for summary judgment as to Count 1.

## ARGUMENT

### I. The Residency Provision does not trigger First Amendment scrutiny because it targets nonexpressive activity.

"First Amendment scrutiny 'has no relevance to [laws] directed at imposing sanctions on nonexpressive activity." *Wright v. City of St. Petersburg*, 833 F.3d 1291, 1298 (11th Cir. 2016) (quoting *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986)). So while "every civil and criminal remedy imposes some conceivable

burden on First Amendment protected activity," a First Amendment claim will not lie unless a particular enforcement action targets expression or if the statute's text "has the inevitable effect of singling out those engaged in expressive activity." *Arcara*, 478 U.S. at 706-07. *Arcara* involved a law that authorized closure of premises found to be used as places of prostitution. *Id.* at 698. But even when the law was invoked to shutter a bookstore, the First Amendment was not implicated because "the sexual activity carried on in this case manifests absolutely no element of protected expression." *Id.* at 705.

The same is true here. The sex crimes that triggered ASORCNA are not protected expression, nor is the law "based on a nonexpressive activity [that] has the inevitable effect of singling out those engaged in expressive activity," like a tax on newsprint and ink. *Id.* at 706-07 (citing *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575 (1983)). Moreover, any impact on expression arises only collaterally from the Residency Provision's direct regulation of nonexpressive activity—establishing residences or conducting overnight visits. "[T]he challenged restrictions apply to all of the conduct of all registrants, not just to those who seek to engage in expression." Doc. 55 at 73 (quoting *Virginia v. Hicks*, 539 U.S. 113, 123 (2003)).

This distinction undermines any reliance on cases like *Packingham v. North Carolina*, in which the laws at issue expressly forbade sex offenders from accessing

specific types of expressive forums (there, social networking websites). 582 U.S. 98 (2017). Here, by contrast, Plaintiffs can engage in expressive activity wherever they like so long as they don't cross the commonsense line from merely engaging in expression to *residing* at that place. The district court never engaged with this fatal flaw in its analysis at either the summary judgment or stay stages. But because the Residency Provision neither "singl[es] out those engaged in expressive activity" nor targets "conduct with a significant expressive element," "the First Amendment is not implicated by" its enforcement. *Arcara*, 478 U.S. at 706-07. Both First Amendment claims—overbreadth and "narrow tailoring"—must accordingly fail. Thus, the district court erred in granting summary judgment to Plaintiffs (and denying summary judgment to Defendants) on those claims and should be reversed.

## II. Plaintiffs have failed to show from the text of the law and actual fact that § 15-20A-11 is substantially overbroad.

Even if the First Amendment is implicated here, Plaintiffs failed to carry their "burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Hicks*, 539 U.S. at 122 (quoting *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988)). "The first step in overbreadth analysis is to construe the challenged statute." *United States v. Williams*, 553 U.S. 285, 293 (2008). The second step requires Plaintiffs to show that the statute (so construed) "punishes a 'substantial' amount of protected expression, 'judged in relation to the statute's plainly legitimate sweep.'" *Hicks*, 539 U.S. at 118 (quoting

*Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)); *see also N.Y. State Club Ass'n*, 487 U.S. at 14 ("To succeed in its challenge, appellant must demonstrate from the text of Local Law 63 and from actual fact that a substantial number of instances exist in which the Law cannot be applied constitutionally."). "But that is so only if the law's unconstitutional applications substantially outweigh its constitutional ones." *Moody v. NetChoice, LLC*, 144 S. Ct. 2382, 2397 (2024). These requirements are "vigorously enforced" because "invalidation for overbreadth is strong medicine that is not to be casually employed." *Williams*, 553 U.S. at 292-93 (cleaned up). Plaintiffs cannot justify administering that strong medicine here.

While the parties disagree about the Residency Provision's outer bounds, there's no real debate about its core operation. The mine-run case involves a sex offender either (1) living in a house or apartment within 2,000 feet of a school or daycare; or (2) living or spending the night with an unrelated minor. Instead, the dispute largely boils down to whether the law implicates Plaintiffs' fringe examples (e.g., whether a sex offender's ordinary church attendance can establish a "residence" under the law). As explained below, it does not. And even if it did, that matters little because these extreme outliers (even if unconstitutional) still do not "substantially outweigh" the core constitutional applications of the law—preventing sex offenders from living with unrelated minors. Moreover, Plaintiffs have not shown "from actual fact" that the Residency Provision is enforced in the way they

contest; to the contrary, every law enforcement official to testify disclaimed the notion that the Residency Provision is enforced in such a way. Left with only their unfounded contentions, Plaintiffs cannot justify the "strong medicine" of facial invalidation.

**A. The Residency Provision does not reach Plaintiffs' edge cases.**

Overbreadth claims necessarily start with the text. The relevant provisions and their interplay are laid out above. *See supra* Statement of the Case § A. And the parties' dispute as to the Residency Provision's scope hinges on the definition of reside, which provides in full:

> RESIDE. To be habitually or systematically present at a place. Whether a person is residing at a place shall be determined by the totality of the circumstances, including the amount of time the person spends at the place and the nature of the person's conduct at the place. The term reside includes, but is not limited to, spending more than four hours a day at the place on three or more consecutive days; spending more than four hours a day at the place on 10 or more aggregate days during a calendar month; or spending any amount of time at the place coupled with statements or actions that indicate an intent to live at the place or to remain at the place for the periods specified in this sentence. A person does not have to conduct an overnight visit to reside at a place.

ALA. CODE § 15-20A-4(20).

Under a proper reading, "reside" means "[t]o be habitually or systematically present at a place," and the statute commands that "[w]hether a person is residing at a place *shall* be determined by the totality of the circumstances, including the amount of time the person spends at the place and the nature of the person's conduct at the

place." ALA. CODE § 15-20A-4(20) (emphasis added). While the statute then provides illustrations of extended and frequent visits to places that could satisfy the definition of "reside," those do not override the totality-of-circumstances inquiry mandated earlier in the statute and that required consideration of, at the very least, "the nature of the person's conduct at the place." *Id.*

By contrast, Plaintiffs and the district court contend that the illustrations in the third sentence of the definition of "reside" control over the totality of the circumstances. Thus, Plaintiffs say, they fear they will be prosecuted for attending political rallies or long church services if they stay more than four hours over three consecutive days or on at least 10 days in a month. Putting aside the fact that Plaintiffs produced no evidence that they have been threatened with such enforcement, their strict-constructionist reading withers under proper statutory construction.

"The plain meaning of a statutory provision derives not only from the particular statutory language at issue, but also the language and design of the statute as a whole." *In re Shek*, 347 F.3d 770, 776-77 (11th Cir. 2020). Thus, courts "must interpret statutes harmoniously, reconciling separate sections so that they are compatible and not contradictory." *Id.* Here, reading these provisions together and in the broader context of ASORCNA confirms that neither Plaintiffs nor any other sex offenders establish a residence at (for example) their churches merely by

attending worship services—even for lengthy periods of time. To that end, there would be little need to require that a sex offender register where he "accepts … employment" or "begins … school attendance" (ALA. CODE § 15-20A-10(a)(1)) if merely showing up to work or school each week meant that the offender "resided" at his office or college campus.[4]

Several other principles of statutory construction support Defendants' reading. *First*, the district court's reading would mean that in many circumstances "reside" would *not* be "determined by the totality of the circumstances" as the statute provides. *Contra Duncan v. Walker*, 533 U.S. 167, 167-68 (2001) (recognizing courts' "duty to give effect, where possible, to every word of a statute" and "especially so when the term occupies so pivotal a place in the statutory scheme"). Ignoring the overriding command expressed by "shall," its interpretation instead subjugates the totality-of-the-circumstances analysis to rote application of examples. But totality-of-the-circumstances tests (as their name suggests) "take into account … 'the whole picture.'" *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting

---

[4] The district court also misreads Defendants' merits brief from *McGuire v. Marshall*, 50 F.4th 986 (11th Cir. 2022) (*McGuire I*) to say that Defendants agreed with the court's interpretation of "reside" when they argued that "if a sex offender is habitually or systematically present at a jogging track or baseball stadium, then yes, that sex offender must register his presence there." Doc. 138 at 53 n.21. Reading this sentence in context reveals it is targeted at someone who's sleeping under the bleachers—not just going to games. *See* State Officials' Supp.Resp.Br., 2017 WL 3474163, at *8-9 (Aug. 9, 2017).

*United States v. Cortez*, 449 U.S. 411, 417 (1981)). And though the district court correctly points out that one factor can sometimes meet a totality-of-the-circumstances test on its own, *see, e.g. id.*, that does not support its interpretation here that *precludes* consideration of any other circumstances besides time (such as the nature of the conduct at the place).

*Second*, that reading discounts the presumption that the definition should be interpreted consistent with the ordinary meaning of "reside," instead redefining plain statutory text by strictly construing illustrations. *Contra Chickasaw Nation v. United States*, 534 U.S. 84, 89 (2001).[5] The Supreme Court's textual analysis in *Chickasaw Nation* is instructive. There, the Court considered part of the Indian Gaming Regulatory Act providing that the provisions of the Internal Revenue Code "including sections 1441, 3402(q), 6041, and 6050I, and chapter 35 . . . concerning reporting and withholding of taxes" regarding gambling winnings "shall apply to Indian gaming operations." 534 U.S. at 87 (citing 25 U.S.C. § 2719(d)(1)). But Chapter 35 did not concern "*reporting* or *withholding* of taxes," it "simply *imposes* taxes." *Id.* The Court thus explained that the "chapter 35 reference [did not have] independent operative effect" that would result in Indian gaming operations being

---

[5] *See also* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 232, 232 (2012) ("[T]he word being defined is the most significant element of the definition's context. The normal sense of that word and its associations bear significantly on the meaning of ambiguous words or phrases in the definition.").

exempted from certain tax liabilities. *Id.* at 89. Instead, the reference was "meant simply to be illustrative, hence redundant—a circumstance underscored by the lack of any suggestion that Congress intended the illustrative list to be complete." *Id.*

Statutory examples don't expand or alter other parts of a provision, especially if doing so would require "seriously rewriting the language of the rest of the statute." *Id.* Those that appear to do just that are bad examples that should be jettisoned in favor of a word's plain meaning.[6] Because spending leisure time in a park or worshiping at a church does not fit the ordinary meaning of reside—including ASORCNA's definition—it doesn't matter whether Plaintiffs' allegations track the list of illustrative examples contained in the provision. Whether a sex offender resides at a place must always be determined by the totality of the circumstances.

*Next,* even the district court agreed its reading produces "absurd" results. Doc. 138 at 58 ("The Court agrees with Defendants—the aggregate-time list is absurd"); *contra Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1188 (11th Cir. 1997). However, it turned the statutory construction question on its head; using its conclusion that the

---

[6] The Court in *Chickasaw Nation* included a helpful illustration: The instruction "Test drive some cars, including Plymouth, Nissan, Chevrolet, Ford, and Kitchenaid" would not redefine the definition of "car" to include kitchen appliances. 534 U.S. at 90-91. Even if the Legislature provides a "bad example," the "presence of a bad example in a statute does not warrant rewriting the remainder of the statute's language." *Id.* at 90. If an example runs contrary to the definition of "reside," such an example is best understood as a "bad example"—not an attempt by the Legislature to unnecessarily redefine a commonly understood and just-explained term.

statute is "absurdly broad" to support Plaintiffs' overbreadth claim rather than to consider whether it warranted considering a different construction. Doc. 138 at 58-59. But the "venerable" principle "that statutory language should not be applied literally if doing so would produce an absurd result" counsels against such a reading. *Merritt*, 120 F.3d at 1188. So if the district court's interpretation were correct and actually required a sex offender to register his office, school, or church as residences, then those resulting absurdities further counsel in favor of Defendants' construction.

*Lastly*, even if the statute does not *have* to be read as the Defendants suggest, it *can* be so read under proper rules of statutory construction and therefore *must* be so read to avoid constitutional difficulty. Courts "will not invoke facial overbreadth 'when a limiting construction has been *or could be* placed on the challenged statute." *Henry v. Marshall*, 45 F.4th 1272, 1292 (11th Cir. 2022) (quoting *Cheshire Bridge Holdings, LLC v. City of Atlanta*, 15 F.4th 1362, 1367 (11th Cir. 2021)) (emphasis added). Thus, "to the extent there is any doubt, [this Court] will uphold a state statute against a facial challenge if the statute is readily susceptible to a narrowing construction that avoids constitutional infirmities." *Id.*[7]

---

[7] To be clear, Defendants maintain that the Residency Provision is constitutional. However, should this Court disagree, it must not declare the statute *facially* unconstitutional where, as here, the restriction is readily susceptible to a narrowing construction that avoids the Court's constitutional concerns.

The district court's refusal to even entertain a limiting construction advanced by State officials recalls the approach deemed improper in *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76-78 & n.30 (1997) (finding "[t]he assurance with which the lower courts" concluded challenged law "not fairly subject to a limiting construction" to be "all the more puzzling" given position of Arizona Attorney General and ballot initiative's sponsors). To be sure, federal courts must be "reluctant to *rewrite* the terms of a state statute," *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993) (emphasis altered), because "state supreme courts are the final arbiters of state law." *LeFrere v. Quezada*, 582 F.3d 1260, 1262 (11th Cir. 2009). But no rewriting is necessary here—only a fair construction advanced by State officials themselves that gives proper meaning to each word and provision of the statute and that does not ignore ordinary meanings.

Similarly, the minor-cohabitation provision requires an adult sex offender to "knowingly" "reside or conduct an overnight visit with a minor." ALA. CODE § 15-20A-(d), (i). Although "overnight visit" is defined as "[a]ny presence between the hours of 10:30 p.m. and 6:00 a.m.," ALA. CODE § 15-20A-4(14), the provision intertwines with residency (construed at length above) and, regardless, applies only when the adult sex offender knowingly "conduct[s]" the visit. "Conduct" means "to direct or take part in the operation or management of." *Conduct*, Merriam-Webster, (June 12, 2024), https://www.merriam-webster.com/dictionary/conduct. Thus, both

the "knowingly" mens rea requirement and the verb "conduct" mandate that an adult sex offender is not guilty of subsection (d) simply by, for example, working an overnight shift at a gas station that a minor happens to patronize. *Contra* Doc. 138 at 81-82. More intentional action is required.

As with many overbreadth challenges, the construction of the Residency Provision here dooms Plaintiffs' claim. However, to the extent any doubt remains as to the meaning of the provision, this Court should certify a question to the Alabama Supreme Court to authoritatively resolve the matter. *See infra* Part II.C; *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (1997) ("Because the only authoritative voice on Alabama law is the Alabama Supreme Court, it is axiomatic that that court is the best one to decide issues of Alabama law."). Properly construed, the Residency Provision does not reach Plaintiffs' far-fetched examples and is thus not substantially overbroad even under their theory of the case.

**B. Even if the Residency Provision reaches Plaintiffs' edge cases, they failed to show—from the text and from fact—that substantial overbreadth exists.**

In recognition that facial challenges upend the usual operation of courts, inherently rest on speculation, and "threaten to short circuit the democratic process," the Supreme Court has made facial challenges "hard to win … even when a facial suit is based on the First Amendment." *NetChoice*, 144 S. Ct. at 2397. Here, even if Plaintiffs could show that the Residency Provision's text hypothetically reaches their

extreme outliers, they still must show "from the text of [the law] and from actual fact[] that substantial overbreadth exists." *Hicks*, 539 U.S. at 122. "But that is so only if the law's unconstitutional applications substantially outweigh its constitutional ones." *NetChoice*, 144 S. Ct. at 2397.[8] Plaintiffs cannot clear that high bar.

Starting with the plainly legitimate sweep, even Plaintiffs have not disputed that the Residency Provision "encompasses a great deal of nonexpressive conduct—which does not implicate the First Amendment at all." *United States v. Hansen*, 599 U.S. 762, 782 (2023). The standard case involves a sex offender either (1) living in a house or apartment within 2,000 feet of a school or daycare; or (2) living or spending the night with a minor. Neither of these situations implicate expressive conduct, tilting the scales overwhelmingly in favor of the Residency Provision's constitutionality.

---

[8] The district court erred even at this first step, discounting multiple hypotheticals presenting admittedly constitutional applications of the Residency Provision on the grounds that they were nonetheless "not examples of the statute's plainly *legitimate* sweep" because it apparently found them disagreeable. *See, e.g.*, Doc. 138 at 82. In doing so, the district court went well beyond the federal courts' limited authority to vindicate ongoing violations of federal law and instead improperly substituted its subjective policy judgment for that of the Alabama Legislature. *Cf. Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law.).

As in *Hansen*, "[w]hen we turn to the other side of the ledger, we find it pretty much blank." 599 U.S. at 782. Weighing the number of applications within the Residency Provision's "legitimate sweep" against Plaintiffs' peripheral proffering reveals the fundamental flaw in their theory—there are vanishingly few instances in which both the illustrations in the definition of reside are met and that implicate expressive conduct. For starters, how many places do people spend more than four hours a day on either more than three consecutive days or more than ten days in a single month? For most people, there are only three realistic answers, none of which is expressive: home, work, or school.[9] So while it's possible to dream up hypotheticals in which the Residency Provision might affect expression, they are the exception rather than the rule and thus do not "substantially outweigh" the plainly legitimate sweep. Put differently, "[t]he fact that there may be some conceivable impermissible applications is not enough to render a statute overbroad." *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1303-04 (11th Cir. 2017). To the extent that any such cases arise, they're "not the stuff of overbreadth—as-applied challenges can take it from here." *Hansen*, 599 U.S. at 785.

More tangibly, Plaintiffs cannot rely on hypotheticals anyway because they must show both "'from the text of [the law] *and from actual fact*[]'" that substantial

---

[9] Each of which ASORCNA separately requires sex offenders to register with law enforcement. *See* ALA. CODE § 15-20A-10.

overbreadth exists. *Hicks*, 539 U.S. at 122 (emphasis added). After full discovery, Plaintiffs have cited no evidence of substantial overbreadth. To the contrary, law enforcement officials—including both local law enforcement officers and the State's Sex Offender Resource Prosecutor (who fields questions from law enforcement regarding ASORCNA's application)—rejected the idea that the Residency Provision is enforced as Plaintiffs contend. *See, e.g.*, Doc. 120-48 at 35:10-14; Doc. 120-49 at 21:13-15; Doc. 120-41 at 33:5-18.

Indeed, and again like *Hansen*, Plaintiffs "fail[] to identify a single prosecution for ostensibly protected expression" pursuant to the Residency Provision. 599 U.S. at 782.[10] According to data obtained from Alabama's Administrative Office of Courts and subsequently compiled and submitted by Plaintiffs' counsel, of the roughly ten thousand sex offenders subject to ASORCNA between 2017 and 2022, Doc. 125 at 50, only 284 were convicted for violating

---

[10] For much the same reasons their overbreadth claim fails, Plaintiffs have also failed to establish standing to bring this pre-enforcement challenge for lack of "a credible threat of prosecution." *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The Supreme Court has made clear that "the 'chilling effect' associated with a potentially unconstitutional law being 'on the books' is insufficient to 'justify federal intervention' in a pre-enforcement suit" regardless of "whether the challenged law in question is said to chill the free exercise of religion, the freedom of speech, the right to bear arms, or any other right." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 50 (2021). Put simply, "allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (cleaned up).

ASORCNA's residency provisions, *id*. at 52. Of these 284 Residency Provision convictions, Plaintiffs have not identified a *single* conviction that resulted from a sex offender engaging in expressive conduct or in which law enforcement deemed a sex offender to have taken up residence at a church, park, or other forum for expression. *Id*. Instead, the statistics further illustrate the Residency Provision's "plainly legitimate sweep." *Williams*, 553 U.S. at 292-93.[11]

Unable to demonstrate overbreadth "from actual fact," Plaintiffs and the district court fall back to denying that any such burden exists. But Plaintiffs cannot carry their burden by simply showing that "the law is overbroad in its text and the realistic applications that text generates," *contra* Doc. 138 at 87 (citing *United States v. Pugh*, 90 F.4th 1318, 1331 (11th Cir. 2024)), because the Supreme Court has rejected overbreadth claims where "[n]o record was made" regarding the alleged unconstitutional applications, *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988); *see also Hansen*, 599 U.S. at 782. Indeed, despite the district court's reliance on *Pugh*, in that case this Court rejected an overbreadth claim

---

[11] For instance, one of the 284 cases involved a sex offender establishing a residence with a minor within 2,000 feet of Huntsville High School and then being charged with sexual abuse of the minor with whom he resided. *State v. Damon McCloud*, CC-2019-003605.00 (Madison Cnty. Cir. Ct. 2019). Other cases, including those within Jefferson, Montgomery, and Autauga Counties, involved a sex offender living in a house or apartment that was within 2,000 feet of one or multiple schools and daycares. *See, e.g.*, *State v. Darion Smiley*, DC-2019-001628.00 (Jefferson Cnty. D. Ct. 2019).

because Plaintiff could not identify any overbreadth based on either "the text of [the law] or *from any actual prosecutions*"—let alone both. 90 F.4th at 1331 (emphasis added). Here, Plaintiffs' proffered evidence demonstrates at most that they cannot conduct overnight visits with their minor relatives—not a substantial curtailment of expressive activity (if, indeed, expressive at all[12]) compared to the statute's overall constitutional sweep.

<p align="center">***</p>

Plaintiffs cannot "what if" their way into facial invalidation of the Residency Provision. The overbreadth doctrine has "the tendency ... to summon forth an endless stream of fanciful hypotheticals." *Williams*, 553 U.S. at 301. But simply "some conceivable applications [are] not enough to render a statute overbroad." *FF Cosmetics*, 866 F.3d at 1303-04. At any rate, hypothetical situations do not satisfy the requirement to demonstrate substantial overbreadth "from actual fact." *Hicks*, 539 U.S. at 122. Because Plaintiffs produced no evidence showing that the Residency Provision burdens substantial amounts of expressive activity compared to its plainly legitimate sweep—i.e., its constitutional application to myriad nonexpressive conduct (namely, preventing sexual abuse of children)—their

---

[12] *But see* Doc. 55 at 84 (district court acknowledging that "it is highly questionable whether Plaintiffs' claimed right to bonding time with relatives is constitutionally protected," because "the Supreme Court has held that there is no 'generalized right of social association'" (quoting *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989))).

overbreadth claim fails. Accordingly, the district court's grant of Plaintiffs' motion for summary judgment (and denial of Defendants') as well as its declaration that the Residency Provision is facially overbroad, must be reversed.

### C. If the scope of the Residency Provision affects the outcome of Plaintiffs' claims, this Court should certify a question to the Alabama Supreme Court.

"When there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie* 'guesses' and to offer the state court the opportunity to interpret or change existing law." *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916-17 (11th Cir. 1995).[13] Indeed, this Court has certified questions to the Alabama Supreme Court regarding overbreadth before and used the answers to reverse a district court's opinion finding an Alabama law overbroad. *Ala. Educ. Ass'n v. State Superintendent of Educ.*, 746 F.3d 1135, 1138-40 (11th Cir. 2014) ("The Alabama Supreme Court's opinion easily resolves any concern that the [subject] language is overbroad."). Rule

---

[13] *See also, e.g.*, *WM Mobile Bay Envtl. Ctr. v. City of Mobile Solid Waste Auth.*, 972 F.3d 1240, 1251 (11th Cir. 2020) ("[A]s a matter of federalism and comity, dispositive issues of Alabama law should be first presented to the Alabama Supreme Court to decide."); *LeFrere v. Quezada*, 582 F.3d 1260, 1262 (11th Cir. 2009) ("[W]hen we write to a state law issue, we write in faint and disappearing ink."); *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (1997) ("Because the only authoritative voice on Alabama law is the Alabama Supreme Court, it is axiomatic that that court is the best one to decide issues of Alabama law.").

18 of the Alabama Rule of Appellate Procedure permits certification if resolving an unsettled question of state law "could be determinative of any of the plaintiffs' claims." *Pittman v. Cole,* 267 F.3d 1269, 1291 (11th Cir. 2001).

Indeed, the district court erred in resisting certification on the grounds that there could be *no* doubt as to the Residency Provision's meaning. *See, e.g.*, Doc. 102 at 2 ("But the plain language of [ASORCNA] answers each of Defendants' questions."). But its cursory rejection—grounded in strict constructionism—proves too much. Indeed, having spent only two sentences on analysis in denying Defendants' motion seeking certification, *id.*, the district court then dedicated 25 pages at summary judgment to interpreting the residency provision, Doc. 138 at 46-71. And this sudden discovery that the Residency Provision is too clear to construe contradicts the district court's previous conclusion in this case (and a previous one brought by Plaintiff JEB) that "[d]ecipher[ing] the statutory meaning of 'residence' is no small feat." *See* Doc. 55 at 7; *Doe #1 v. Marshall*, No. 2:15-cv-606-WKW, 2018 WL 1321034, at *4 (M.D. Ala. Mar. 14, 2018) (identical).[14] Moreover, the summary judgment opinion concluded, on the same page, both that "the text is *clear*" and that "[i]t just speaks in extraordinary and *conflicting* ways." *Id.* at 70 (emphasis added). This latter statement alone warranted certification.

---

[14] *See also Doe #1*, 2018 WL 1321034, at *10 ("Baffling though it may be, the statutory complexity alone does not compel a finding of vagueness.").

The short shrift given to even the suggestion of certification is, to say the least, "puzzling." *Arizonans for Official English*, 520 U.S. 43 at 75-80; *see also id.* at 78 ("Given the novelty of the question and its potential importance to the conduct of Arizona's business, plus the views of the [Arizona] Attorney General and those of [the ballot initiative's] sponsors, the certification requests merited more respectful consideration than they received in the proceedings below."). Moreover, as discussed further above, *see supra* Part II.A, the interpretation adopted by the district court is far from "the clear and uncontestable interpretation of the words of the provision," *contra* Doc. 138 at 65.

In sum, if this Court finds the Residency Provision's scope dispositive to the outcome of any of Plaintiffs' claims, it should certify a question to the Alabama Supreme Court. However, as explained above, Plaintiffs' claims can be rejected even if their preferred interpretation were adopted. *See supra* Part II.B. But affirming the judgment below would be improper without first certifying questions to the Alabama Supreme Court to allow it "to interpret or change existing law." *Mosher*, 52 F.3d at 916-17.

## III. The district court improperly granted relief on an unpleaded and meritless "narrow tailoring" claim.

Multiple legal missteps make the district court's grant of relief on the so-called "narrow tailoring" claim improper. As an initial matter, this claim was never pleaded. The complaint's use of "and lacks proper tailoring" within Plaintiffs'

clearly titled overbreadth and vagueness counts failed to put Defendants on fair notice of a distinct "narrow tailoring" claim, and this claim-within-a-claim pleading violates this Court's shotgun-pleading jurisprudence. But even if proceeding to the merits of this unpleaded claim were proper, the claim fails on the merits for multiple reasons. Indeed, as explained above, it fails at step one: the Residency Provision's regulation of nonexpressive conduct does not invoke First Amendment scrutiny. *See supra* Part I.

But even if the law implicates the First Amendment, the law—by furthering the State's interest in protecting minors from sexual recidivism—easily satisfies intermediate scrutiny under the *O'Brien* test. Next, in addition to the district court's legal errors, the district court resolved material disputes of fact in Plaintiffs' favor by failing to give weight to Defendants' expert evidence (which further supports the constitutionality and functionality of the Residency Provision). Lastly, in finding that the Residency Provision was facially unconstitutional, the district court failed to conduct the proper facial analysis. For all these reasons, this Court should reverse the district court's judgment as to the so-called "narrow tailoring" claim.

## A. Plaintiffs did not properly plead a "narrow tailoring" claim.

The operative complaint failed to provide Defendants fair notice of a narrow tailoring claim separate from Plaintiffs' overbreadth challenge. Even if such a claim

existed, Plaintiffs' claim-within-a-claim pleading is an impermissible shotgun pleading. The district court should not have granted relief either way.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." And Rule 10(b) requires that a plaintiff "state its claim or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and that "each claim founded on a separate transaction or occurrence … be stated in a separate count" "[i]f doing so would promote clarity." "The 'self-evident' purpose of these rules is 'to require the pleader to present his claims discretely and succinctly, so that[] his adversary can discern what he is claiming and frame a responsive pleading." *Barmapov v. Amuial,* 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.,* 792 F.3d 1313, 1320 (11th Cir. 2015)).

The operative complaint does not satisfy these pleading requirements and thereby fails to provide fair notice. The Fourth Amended Complaint contains five counts, none of which assert a separate "narrow tailoring" claim. Doc. 88 at 59-66. The only possible support for the existence of such a claim are sporadic references to "narrow tailoring" as to both Count 1 ("Overbreadth — Facial and As Applied

Challenge") and Count 2 ("Due Process-Void for Vagueness").[15] *Id.* at 60-61 ¶¶ 305, 312-13; *see also id.* ¶¶ 248, 251. But those passing usages of the phrase do not suffice to plead a separate claim. *See Barmapov*, 986 F.3d at 1324.

Context confirms that the complaint contains no separate "narrow tailoring" claim. Plaintiffs' use of the phrase within both Counts I and II implies that Plaintiffs considered (albeit improperly) a tailoring analysis to be part of both their overbreadth and vagueness claims. And Plaintiffs' "Request for Relief" contains no separate request that any particular provisions of ASORCNA be declared unconstitutional as improperly tailored, standing in stark contrast with its highly specific requests for relief premised on its other claims. Doc. 88 at 66-68. For example, Plaintiffs' first request paragraph asks that several ASORCNA provisions be declared "unconstitutionally overbroad, facially and as applied to Plaintiffs, in

---

[15] A narrow-tailoring analysis is not necessarily part of an overbreadth claim, *see United States v. Dean,* 635 F.3d 1200, 1208 (11th Cir. 2011) ("We address this argument separately from overbreadth because it sounds like a challenge to the statute's narrow tailoring rather than its overbreadth."), or a vagueness claim, *see, e.g.*, *Pine v. City of West Palm Beach*, 762 F.3d 1262 (11th Cir. 2014) (assessing narrow tailoring under the First Amendment separate from the vagueness claim). Plaintiffs' failure to understand the relevant tests for these doctrines does not gives rise to another cognizable claim. *Accord* Doc. 55 at 68 (discussing Plaintiffs' failure, at the motion-to-dismiss stage, to apply the correct body of law to their claims).

violation of the First and Fourteenth Amendments" with no mention of a separate tailoring basis. Doc. 88 at 66-68 (emphasis omitted).[16]

Though only the complaint matters[17] in resolving whether Plaintiffs properly pleaded a distinct narrow tailoring claim (and thus the analysis could end here), extrinsic sources support that no one considered this separate claim to exist until the district court entered summary judgment on it. These sources show (at most) that Plaintiffs considered tailoring to be a component of their overbreadth claim. *See* Doc. 46-1 at 88-89 (Pls.' MTD Resp.) (ASORCNA fails "under overbreadth doctrine" because "it lacks requisite narrow tailoring"); Doc. 81-1 at 29 (Pls.' Mot.

---

[16] Nor does reference to an "as-applied" overbreadth claim put Defendants on notice of the "narrow tailoring" claim that the district court adjudicated as a separate facial claim. *See* Doc. 88 at 59, ¶ 306; Doc. 138 at 89, 161-62. As an initial matter, Plaintiffs' failure to mention "narrow tailoring" there further discounts their revisionist argument. *See Shiloh Christian Ctr. v. Aspen Specialty Ins. Co.,* 65 F.4th 623, 629 (11th Cir. 2023) (recounting "the rule of *expressio unius est exclusio alterius—i.e.,* that '[t]he expression of one thing implies the exclusion of others'" (quoting Scalia & Garner, *supra*, at 107)). More importantly, there is no such thing as an as-applied overbreadth claim. *See Hansen*, 599 U.S. at 785 ("This is not the stuff of overbreadth—as-applied challenges can take it from here.").

[17] Plaintiffs cannot prop up a deficient claim "through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). "And it goes without saying that the court is barred from amending a plaintiff's claim." *Miccosukee Tribe of Indians of Fla. v. United States,* 716 F.3d 535, 559 (11th Cir. 2013). Rather, a plaintiff can only add a claim by amending his complaint pursuant to Federal Rule of Civil Procedure 15. *Gilmour*, 382 F.3d at 1315. Plaintiffs thus cannot retroactively rely on either their summary-judgment briefing or the district court's previous orders to broaden the scope of their deficient complaint.

for Decl. Relief Br.) (The Residency Provision is "facially overbroad" because, *inter alia*, it "lacks narrow tailoring."); Doc. 124 at 1 (Pls.' MSJ) ("The Residency Provisions … are unconstitutionally overbroad[.]"); Doc. 130 at 53, 82 & n.37 (Pls.' MSJ Resp.) (linking narrow tailoring to their overbreadth claim); Doc. 134 at 31-32 (Pls.' MSJ Reply) (same).

Nothing that the district court cited in its summary-judgment opinion alters the conclusion that Plaintiffs did not intend to bring two distinct claims. *See* Doc. 138 at 88-89 & n.37. As previously discussed, the operative complaint (Doc. 88) and Plaintiffs' MSJ Response (Doc. 130) discuss narrow tailoring within the overbreadth claim, so those citations change nothing. The district court also cites its motion-to-dismiss opinion (Doc. 55), *see id.* at 89 n.37, but the cited page (Doc. 55 at 86) falls under Section IV.G—entitled "**Count 1: Overbreadth (Facial)**." Section IV.G.2 begins on that page and immediately begins discussion of "what standard of review to apply to *this* facial claim" by first discussing a case where "minor children brought an *overbreadth* challenge against Indiana's minor curfew law." Doc. 55 at 68, 86 (emphasis added). More telling still, in a contemporaneous order on Plaintiffs' motion for preliminary injunction, the district court explained that "Count 1 is an overbreadth challenge under the First Amendment directed at every provision of ASORCNA." Doc. 56 at 1; *see also, e.g.*, Doc. 30 at 1 ("Plaintiff is granted leave to

add his overbreadth and equal protection claims (Counts 1 and 3).")). In sum, nothing in the record below supports a standalone narrow tailoring claim.

Even assuming that such a "narrow tailoring" claim could be found in the operative complaint, its amalgamation with the overbreadth claim within Count 1 would require dismissal as a shotgun pleading. This Court has interpreted Rules 8(a) and 10(b) to prevent shotgun pleadings that, *inter alia*, "commit[] the sin of not separating into a different count each cause of action or claim for relief." *Weiland,* 792 F.3d at 1323 & n.13. The district court rejected Defendants' shotgun-pleading arguments because "Defendants, in turn, were able to fashion a response to Plaintiffs' claims." Doc. 55 at 67. However, given that Defendants' motion-to-dismiss briefing did not address a "narrow tailoring" claim, this statement would not be true if such claim existed. *See* Doc. 36. Accordingly, Defendants *never* addressed the unpleaded claim until they were ambushed with it in the district court's summary judgment opinion—perfectly illustrating the prejudice and problems that follow when district courts refuse to address impermissible shotgun pleadings. *See generally Barmapov*, 986 F.3d at 1326-1332 (Tjoflat, J., concurring).

Indeed, the district court ignored binding precedent on shotgun pleadings. Despite acknowledging that "Plaintiffs' Second Amended Complaint [was] far from a 'short and plain statement of the claim(s) showing that [they] are entitled to relief," Doc. 55 at 66, it failed to "sua sponte give [Plaintiffs] one chance to replead before

dismissing his case with prejudice on shotgun pleading grounds." *Barmapov,* 986 F.3d at 1326 (majority op.) (quoting *Vibe Micro, Inc. v. Shabanets,* 878 F.3d 1291, 1296 (11th Cir. 2018)); *see also id.* at 1328 (Tjoflat, J., concurring) ("[W]e have repeatedly emphasized district courts' 'duty to define the issues at the earliest stages of litigation' by ordering the replead-ing of a shotgun complaint." (quoting *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.,* 162 F.3d 1290, 1333 (11th Cir. 1998)); *id.* ("[D]istrict courts are flatly forbidden from scouring shotgun complaints to craft a potentially viable claim for a plaintiff.").

Plaintiffs' complaint failed to state—in the most basic sense—a "narrow tailoring" claim. Thus, the district court's grant of summary judgment for Plaintiffs on this unpleaded claim should be reversed.

## B. The First Amendment does not apply, but the Residency Provision clears *O'Brien*'s "relatively lenient" standard regardless.

Again, the Residency Provision is not subject to First Amendment scrutiny because it is a law "directed at imposing sanctions on nonexpressive activity." *Wright*, 833 F.3d at 1298; *see supra* Part I. Regardless, "[m]erely saying that [the Residency Provision] 'implicates the First Amendment' is a far cry from concluding that the First Amendment proscribes such regulations[.]" *Club Madonna Inc. v. City of Miami Beach,* 42 F.4th 1231, 1243 (11th Cir. 2022). Because the Residency Provision is content neutral, Plaintiffs and the court below agreed that, at most, intermediate scrutiny (and not strict) would apply. *See* Doc. 138 at 43; Doc. 125 at

87. "Under that standard, a law must further a 'substantial governmental interest' that is 'unrelated to the suppression of free expression.'" *Moody v. NetChoice*, 144 S. Ct. 2383, 2407 (2024) (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)).[18]

Given the district court's searching tailoring analysis below, *see* Doc. 138 at 88-107, it's important to clarify what *O'Brien*'s "relatively lenient standard" requires. *Texas v. Johnson*, 491 U.S. 397, 407 (1989). As to the interest at issue, the government need not make an "evidentiary showing" that the harms combatted are "real." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 299 (2000) (plurality op.). "Nor must [the government] prove that the specific conduct of a 'particular' challenger will cause this harm." *Lichtenstein v. Hargett*, 83 F.4th 575, 597 (6th Cir. 2023)

---

[18] *NetChoice* cites *O'Brien* as the articulation of intermediate scrutiny, 144 S. Ct. at 2247, seeming to resolve the "little, if any, differen[ce]" between *O'Brien*'s test "for validating a regulation of expressive conduct" and the standard applied to time, place, or manner restrictions, *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 298 (1984). *See Club Madonna*, 42 F.4th at 1244-1245 (deciding which of the two tests to apply). The district court—without considering *O'Brien*'s applicability—decided that the Residency Provision is subject to "intermediate scrutiny under the content-neutral time, place, or manner framework" because it "does regulate expressive conduct that is necessarily integral to speech." Doc. 138 at 91 (citations omitted). But because "the *O'Brien* test is used to evaluate regulations of expressive conduct[,]" *Club Madonna*, 42 F.4th at 1244 (citation omitted) (cleaned up), the district court should have applied the *O'Brien* test under its own reasoning to the extent any difference remains. Regardless, this Court has "suggested that the time, place, and manner test provides more breathing room to the government" than *O'Brien*, *id.* (citing *Lady J. Lingerie v. City of Jacksonville*, 176 F.3d 1358, 1364 (11th Cir. 1999), so the Residency Provision easily survives under that test too given that it clears *O'Brien*'s (already lenient) review.

(quoting *United States v. Albertini*, 472 U.S. 675, 688 (1985)). "It instead may rely on highly general interests that are obviously important, such as the 'interest in raising and supporting the Armed Forces,' in 'conserving park property,' or in 'deter[ring] crime." *Id.* (internal citations omitted). "And it may rely on prior cases that have already treated the cited interests as important." *Id*

*O'Brien*'s application does not require a "least restrictive means analysis." *Pap's A.M.,* 529 U.S. at 301-02; *accord Turner Broad. Sys. v. FCC,* 512 U.S. 622, 662 (1994). And "proposed alternative methods" of pursuing its interests "are beside the point." *Rumsfeld v. F. for Acad. & Inst. Rights, Inc.,* 547 U.S. 47, 67 (2006). Indeed, "[s]ince *O'Brien*, however, [the Supreme Court] has applied a test that falls much closer to the deferential rational-basis test than the demanding strict-scrutiny test." *Lichtenstein*, 83 F.4th at 596-97. While *O'Brien* states that "the incidental restriction on alleged First Amendment freedoms [must be] no greater than is essential to the furtherance of that interest," 391 U.S. at 377, that is true "so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Albertini,* 472 U.S. at 689; *accord Rumsfeld*, 547 U.S. 47, 67 (2006); *First Vagabonds Church of God v. City of Orlando*, 638 F.3d 756, 762-63 (11th Cir. 2011) (en banc).[19]

---

[19] Referring to this claim as a "traditional First Amendment tailoring challenge," Doc. 138 at 27, is thus a misnomer: whether the Residency Provision goes farther

It is undisputed that the Residency Provision furthers "a government objective of surpassing importance"—"[t]he prevention of sexual exploitation and abuse of children." *New York v. Ferber,* 458 U.S. 747, 757 (1982); *accord* Doc. 138 at 93 ("There is no doubt that protecting the public, and particularly children, is a significant and legitimate government interest."). That interest, wholly unrelated to expression, was the Alabama Legislature's stated intent in adopting the provisions, enshrined within legislative findings that "the residence restrictions, together with monitoring and tracking" "furthers the primary governmental interest of protecting vulnerable populations, particularly children." ALA. CODE § 15-20A-2. Indeed, according to Plaintiffs, around two-thirds of States utilize some form of residency restrictions as part of their statutory schemes to prohibit sex offender recidivism. *See* Doc. 149 at 18 n.7. Even the district court recognized that the Residency Provision "add[s] to the effectiveness," *Rumsfeld*, 547 U.S. at 67, of achieving these interests: "there can be no doubt that prohibiting certain dangerous people from living with minors is a legitimate way to protect children," Doc. 138 at 93.

While the district court's own admissions shows that the Residency Provision easily satisfies scrutiny under *O'Brien*, Defendants provided additional evidence to

---

than necessary to achieve the State's legitimate interest is irrelevant under the *O'Brien* test. *See Albertini,* 472 U.S. at 689 ("The validity of such regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests.").

that effect. In finding that the Residency Provision was not narrow tailored under its searching analysis, the district court improperly resolved disputes of material fact in Plaintiffs' favor by handwaving away the expert report of Dr. Matt DeLisi. *See* Doc. 120-27. His opinions included the following:

- "Most sexual crime is not reported to police, thus studies of sexual offenders (including those that purport to analyze sexual offenders that are 'offense free') are underestimating their true recidivism." *Id.* at 9.

- "[A] significant number of convicted sexual offenders are continuing to perpetrate sexual violence against victims who do not report their victimization for any number of reasons." *Id.* at 10.

- "Imposing restrictions on convicted sex offenders is reasonable from a criminological perspective given the potential public safety threats that they pose." *Id.* at 40.

- "Residency restrictions are important because they limit opportunity structures where sexual offenders would have access to potential victims." *Id.* at 45.

- "Research supports the effectiveness of sex offender restrictions at deterring recidivist activity and thus promoting public safety." *Id.* at 56.

While the district court's weighing of and failure to accept Defendants' evidence is reason alone to reverse, *see Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742

(11th Cir. 1996), Dr. DeLisi's report further shows that the Residency Provision advances important governmental interests and is thus constitutional.

As the district court found, "[u]ndoubtedly, certain sex offenders can be legitimately prevented from sharing a home with minors and from having unfettered, unsupervised access to minors." Doc. 138 at 107. For this reason at a minimum, the Alabama Legislature's stated interest in protecting the public from sexual recidivism would be achieved less effectively without *any* residency restrictions—as the district court's relief imposes. *Cf.* Doc. 128 at 100 ("[T]he court recognizes that its ruling will fracture the existing structure of ASORCNA and will necessarily have some harmful effects[.]"). That is enough to pass scrutiny under *O'Brien* (assuming the First Amendment even applies to this statute that does not target expression). Thus, the district court's grant of relief on the "narrow tailoring" claim should be reversed.

### C. Finding the Residency Provision facially unconstitutional was inappropriate.

The district court entered judgment in Plaintiffs' favor "as to their facial First Amendment challenges to the residency provision." Doc. 138 at 162. While its final judgment granted as-applied relief, Doc. 139 at 3-4, its opinion found that the Residency Provision "facially violates the First Amendment because it criminalizes too much protected conduct without sufficient tailoring to the state's significant interests," Doc. 138 at 89; *see also, e.g.*, *id.* at 161-62 ("Judgment will be entered in Defendants' favor for all claims, except Plaintiffs' facial First Amendment

challenges to the residency provision"). In the stay briefing below, Defendants argued that the district court failed to determine that there were "no set of circumstances" under which the Residency Provision would be valid, *United States v. Salerno*, 481 U.S. 739, 745 (1987), but the Supreme Court has since appeared to clarify that the proper inquiry for all First Amendment facial challenges is whether "a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," *NetChoice*, 144 S. Ct. at 2397.

The district court never engaged with either test, and the Residency Provision clears either hurdle.[20] It is facially constitutional under *Salerno* by the district court's own admission: "certain sex offenders can be legitimately prevented from sharing a home with minors and from having unfettered, unsupervised access to minors." Doc. 138 at 107. And it's facially constitutional under *NetChoice* because its unconstitutional applications do not substantially outweigh its constitutional ones. *See supra* Part II.B. Either way, the district court improperly found the Residency Provision to be facially unconstitutional.

---

[20] In denying Defendants' motion to stay, the district court further declined to address the facial standard, explaining that it "did not grant universal or facial relief under the First Amendment narrow-tailoring analysis." Doc. 151 at 3. While correct on the relief, as discussed above, the district court found that "the residency provision *facially* fails to comport with the First Amendment[.]" Doc. 138 at 106 (emphasis added).

## IV. The district court's permanent equitable relief swept too broadly and improperly failed to consider whether Plaintiffs satisfied the equitable factors.

"The decision to grant a permanent injunction must be based on the plaintiffs' demonstration:"

> (1) that they have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiffs and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Broadcast Music*, 772 F.3d at 1261 (citing *eBay*, 547 U.S. at 391).

At no point did the district court consider these factors in enjoining Defendants' enforcement of the Residency Provision as to the Plaintiffs. Additionally, because declaratory relief often has "virtually the same practical impact as a formal injunction would[,]" "the propriety of declaratory and injunctive relief should be judged by essentially the same standards" where it will "result in a clearly improper interference with the state proceedings." *Samuels v. Mackell*, 401 U.S. 66, 72 (1971).[21] Here, the declaratory judgment meddles with State

---

[21] Although some situations exist in which "declaratory relief may be available even though an injunction is not," *Green v. Mansour*, 474 U.S. 64, 72 (1985) (citing *Steffel v. Thompson*, 415 U.S. 452, 462 (1974)), "[t]he propriety of issuing a declaratory judgment may depend upon equitable considerations, and is also 'informed by the teachings and experience concerning the functions and extent of federal judicial power,'" *id.* (internal citations omitted) (quoting *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 243 (1952)).

enforcement of Residency Provision violations wholly unrelated to expression (even under Plaintiffs' view) and thus "principles of federalism militate[] altogether against federal intervention" espoused by its declaratory judgment absent a heightened equitable showing. *Steffel*, 415 U.S. at 472.[22] So because the facial relief declaring the Residency Provision unconstitutional similarly failed to find the ordinary equitable factors met, the entirety of the district court's relief was improper.

But even had the district court considered the equitable factors, cursory review of those factors reveal that it erred in granting equitable relief. First, given that (as government officials) Defendants' "interest and harm merge with the public interest," *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020), the sweeping breadth of the remedy renders the equitable relief overwhelmingly against the public interest. As an initial matter, any relief that interferes with a State's enforcement of its own law "clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018). That is all the more true where, as here, the district

---

[22] A declaratory judgment that a statute is unconstitutional on its face, including one based in overbreadth, "will likely have a more significant potential for disruption of state enforcement policies than a declaration specifying a limited number of impermissible applications of the statute." *Steffel*, 415 U.S. at 474. Indeed, it seems to threaten—albeit on a much larger scale—to create friction with State functions and interfere with judicial proceedings in a way that the *Pullman* and *Younger* abstention doctrines ordinarily limit. *See, e.g.*, *Middlesex Cnty. Ethics. Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (discussing *Younger* abstention); *Pittman*, 267 F.3d at 1286 (discussing *Pullman* abstention).

court's order threatens to interfere with a key State function—prosecuting violations of its criminal laws. *Cf. Middlesex Cnty.*, 457 U.S. at 431.

More concretely for the public at large, "it is well established that states have a compelling interest in safeguarding the physical and psychological well-being of minors." *Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1220 (11th Cir. 2023) (cleaned up); *see also* Doc. 138 at 93 ("There is no doubt that protecting the public, and particularly children, is a significant and legitimate government interest."). As even Plaintiffs have agreed: "No reasonable person wishes that sexually violent predators or serial child molesters be allowed to freely roam the communities of Alabama unchecked, with no monitoring of activity allowing for easy access to future victims." Doc. 43 at 15. But the relief entered by the district court permits just that.

Under the district court's order, the State will be unable to prevent any sex offender—not just Plaintiffs—from residing not only near minors but even with minors. Regardless of whether some subclass of sex offenders pose some comparatively lower risk of recidivating, the risk is still significant given the magnitude of the harm associated with child sexual abuse. Doc. 138 at 102; *see United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (en banc) (describing the harm from child sexual abuse as "enormous and permanent"). And "the State has a profound interest in the welfare of the child, particularly his or her being sheltered

from abuse." *Doe v. Kearney*, 329 F.3d 1286, 1293 (11th Cir. 2003). The public interest in protecting the public at large and children in particular counsels against the district court's equitable relief.

The provisions that would be neutered by the district court's judgment protect children from all sex offenders, including those who have committed any number of heinous sex offenses targeting children. *See generally* ALA. CODE § 15-20A-5 (listing sex crimes). Indisputably, at least some offenses justify such restrictions. *See* Doc. 138 at 107. Indeed, the district court "recognize[d] that its ruling will fracture the existing structure of ASORCNA and will necessarily have some harmful effects, in particular preventing the enforcement of section 11(d) against certain dangerous people who constitutionally can be prevented from living under the same roof with minors." *Id.* at 110. Public safety cautions against allowing the entire population of sex offenders at large—which necessarily includes serial child abusers, sex traffickers, child porn producers, etc.—to move in with or next door to children currently protected by § 15-20A-11(a) and (d).

By contrast, Plaintiffs and sex offenders at large face little harm. Testimony from law enforcement establishes that the challenged provisions are not enforced according to Plaintiffs' alleged subjective fears but rather based on the totality of the circumstances. *See, e.g.*, Doc. 120-48 at 35:10-14; Doc. 120-49 at 21:13-15; Doc. 120-41 at 33:5-18. Although this interpretation of § 15-20A-11 did not align with

the district court's, it is—as a matter of fact—the way in which it is enforced on the ground; Plaintiffs never showed that the Residency Provision was enforced against them in the way they complained. So, on the equities, Plaintiffs and sex offenders generally can continue attending church, political rallies, or any other speech-centric activity they can imagine so long as the totality of the circumstances show that Plaintiffs are not crossing the commonsense line from attending to living at those places. But even to the extent Plaintiffs suffer harm under their current living arrangements, that harm is significantly outweighed by the risk of permitting an unknown number of sex offenders to live near or with an unknown number of children.

Moreover, the district court's relief is far broader than necessary to afford Plaintiffs' relief. Despite recognizing that "the court's duty is to narrowly invalidate the violative portions of ASORCNA," Doc. 138 at 110 (collecting Supreme Court cases), the court below enjoined enforcement of the entire Residency Provision as opposed to invalidating only the limited statutory provisions forming the basis for its finding of constitutional infirmity. *Contra Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987). The district court's order does not stop at remedying the perceived threat to First Amendment rights; it forbids enforcement of the statute against sex offenders in any context—expressive or not. Plaintiffs could receive relief without preventing the State from enforcing the challenged provisions against other sex

offenders, including those that everyone agrees may properly be subjected to such enforcement. *Accord Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 921 (2024) (Gorsuch, J., concurring). Even if some form of facial relief were warranted, it should have been far more targeted than that entered by the district court (particularly given the district court's recognition of Alabama's strong severability provision). *See* Doc. 138 at 110 n.47 (citing ALA. CODE § 1-1-16).

More fundamentally, the court went beyond its authority to adjudicate an Article III "case or controversy" when it granted Plaintiffs statewide relief even though they represented no class. "The fundamental principle of equity guiding the court" when it issues an order is that "relief should be limited in scope to the extent necessary to protect the interests *of the parties*." *Ga. Advoc. Off. v. Jackson*, 4 F.4th 1200, 1209 (11th Cir. 2021) (cleaned up, emphasis added). Because the "district court fail[ed] to follow this principle and draft[ed] an unnecessarily broad [order], the district court abuse[d] its discretion." *Id*.

Given the potential risk of harm by the facial non-enforcement of § 15-20A-11(a) and (d), the equities overwhelmingly favor Defendants and thus should have prevented both the scope and the grant itself of the equitable relief entered here.

## CONCLUSION

The Court should reverse the judgment below.

Respectfully submitted,

Steve Marshall
   *Attorney General*

Edmund G. LaCour Jr.
   *Solicitor General*

James W. Davis
   *Deputy Attorney General*

/s/ Brenton M. Smith
Brenton M. Smith
Benjamin M. Seiss
   *Assistant Attorneys General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Ave.
Montgomery, AL 36104
Phone: (334) 242-7300
Edmund.LaCour@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

***Counsel for Defendants-Appellants Attorney General Marshall and Secretary Taylor***

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B) as it contains 12,909 words, excluding those parts exempted by FED. R. APP. P. 32(f).

I further certify that this brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and the type style requirements of FED. R. APP. P. 32(a)(6), as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*s/* Brenton M. Smith
Brenton M. Smith
  *Assistant Attorney General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: 334.242.7300
Facsimile: 334.353.8400
Brenton.Smith@AlabamaAG.gov

**Counsel for Defendants-Appellants Attorney General Marshall & Secretary Taylor**

**CERTIFICATE OF SERVICE**

I certify that, on August 7, 2024, I electronically filed this document using

the Court's CM/ECF system, which will serve all counsel of record.

<div style="margin-left: 40%">

*s/* Brenton M. Smith

Brenton M. Smith
 *Assistant Attorney General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: 334.242.7300
Facsimile: 334.353.8400
Brenton.Smith@AlabamaAG.gov

***Counsel for Defendants-Appellants Attorney General Marshall & Secretary Taylor***

</div>