No. 24-11731

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

MICHAEL MCGUIRE, et al.,

*Plaintiffs-Appellees,*

*v.*

STEVE MARSHALL,

in his official capacity as Attorney General of the State of Alabama, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court for the Middle District of
Alabama, No. 2:19-cv-00174

## BRIEF FOR PLAINTIFFS-APPELLEES

J. MITCHELL MCGUIRE
SUSANNE E. CORDNER
MCGUIRE & ASSOCIATES, LLC
31 Clayton Street
Montgomery, AL 36104
(334) 517-1000

*Counsel for Plaintiffs-Appellees*

PETER KALICKI
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

KEVIN M. LAMB
SAMUEL M. STRONGIN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000

JOSHUA M. FEINZIG*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y. 10007
(212) 230-8800

*Counsel for Plaintiff-Appellee Michael McGuire*

October 9, 2024

## CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

Plaintiffs-Appellees certify that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1-1:

1. Adams, Hon. Jerusha T. – Magistrate Judge for the United States District Court for the Middle District of Alabama;

2. Alabama Attorney General's Office – Counsel for Defendants-Appellants;

3. Alabama Law Enforcement Agency ("ALEA") – State agency directed by Defendant-Appellant Secretary Taylor;

4. Chynoweth, Brad A. – Former counsel for Defendants (terminated);

5. Cordner, Susanne E. – Counsel for Plaintiffs-Appellees;

6. Davis, James W. – Counsel for Defendants-Appellants;

7. Feinzig, Joshua M. – Counsel for Plaintiff-Appellee Michael McGuire;

8. J.E.B. – Plaintiff-Appellee;

9. Jones, Jeremy – Former Defendant (terminated);

10. Kalicki, Peter – Counsel for Plaintiff-Appellee Michael McGuire;

11. K.L.L. – Plaintiff-Appellee;

12. LaCour, Edmund G. – Counsel for Defendants-Appellants;

13.    Lamb, Kevin M. – Counsel for Plaintiff-Appellee Michael McGuire;

14.    Marshall, Attorney General Steven T. – Defendant-Appellant;

15.    McGuire & Associates, LLC – Counsel for Plaintiffs-Appellees;

16.    McGuire, J. Mitchell – Counsel for Plaintiffs-Appellees;

17.    McGuire, Michael A. – Plaintiff-Appellee;

18.    McKay, Charles A. – Counsel for Defendants-Appellants;

19.    Mink, Richard D. – Counsel for Defendants-Appellants;

20.    Seiss, Benjamin M. – Counsel for Defendants-Appellants;

21.    Smith, Brenton M. – Counsel for Defendants-Appellants;

22.    Strongin, Samuel – Counsel for Plaintiff-Appellee Michael McGuire;

23.    Taylor, ALEA Secretary Hal – Defendant-Appellant;

24.    Watkins, Hon. William Keith – District Judge for the United States District Court for the Middle District of Alabama;

25.    Wilmer Cutler Pickering Hale and Dorr LLP – Counsel for Plaintiff-Appellee Michael McGuire.

No publicly traded company or corporation has an interest in the outcome of this case.

Respectfully submitted this 9th day of October 2024.

/s/ Kevin M. Lamb
KEVIN M. LAMB

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiffs request the Court grant oral argument in this case. This appeal presents important questions of constitutional law, and plaintiffs believe that oral argument would assist the Court in resolving these questions.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES AND CORPORATE
    DISCLOSURE STATEMENT ................................................................ C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................ i

TABLE OF AUTHORITIES ................................................................................ iv

INTRODUCTION ................................................................................................ 1

JURISDICTIONAL STATEMENT ...................................................................... 3

STATEMENT OF THE ISSUES .......................................................................... 4

STATEMENT OF THE CASE ............................................................................. 4

    A.    ASORCNA's Residency Provision ................................................. 4

    B.    The Residency Provision's Restrictions On Plaintiffs'
        Activities ........................................................................................ 7

    C.    District-Court Proceedings ............................................................ 11

STANDARDS OF REVIEW .............................................................................. 16

SUMMARY OF THE ARGUMENT ................................................................... 16

ARGUMENT ..................................................................................................... 20

I.    THE RESIDENCY PROVISION IMPLICATES FIRST AMENDMENT
    ACTIVITY ................................................................................................ 20

II.    SECTIONS 11(a) AND 11(d) OF THE RESIDENCY PROVISION ARE
    EACH FACIALLY UNCONSTITUTIONAL ............................................. 23

    A.    Section 11(a) Is Substantially Overbroad ................................... 24

        1.    The circumstances in the aggregate-time list
            suffice, on their own, to establish a residence .......................... 25

2.    The unconstitutional applications of Section 11(a) substantially outweigh the constitutional ones ........................32

B.    Section 11(d) Is Substantially Overbroad ...........................................37

C.    Certification Is Unwarranted ...............................................................39

III.   THE RESIDENCY PROVISION CANNOT BE CONSTITUTIONALLY APPLIED TO PLAINTIFFS .................................................................................41

A.    Plaintiffs Adequately Pled Their As-Applied Claim .........................42

B.    The Residency Provision Fails Intermediate Scrutiny......................45

1.    The district court applied the correct legal standard................46

2.    The Residency Provision is not narrowly tailored...................49

IV.   THE DISTRICT COURT'S REMEDY WAS PROPER ...........................................54

CONCLUSION....................................................................................................57

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**CASES**

Page(s)

*AFSCME Council 79 v. Scott,*
    717 F.3d 851 (11th Cir. 2013) ......................................................30

*Akridge v. Alfa Insurance Cos.,*
    93 F.4th 1181 (11th Cir. 2024) ....................................................38

*Alfa Mutual Insurance Co. v. City of Mobile,*
    981 So.2d 371 (Ala. 2007)...........................................................30

*Arcara v. Cloud Books, Inc.,*
    478 U.S. 697 (1986)...............................................................22, 23

*Aschroft v. Free Speech Coalition,*
    535 U.S. 234 (2002).........................................................23, 24, 54

*Barnes v. Glen Theatre, Inc.,*
    501 U.S. 560 (1991)....................................................................48

*Barrett v. Walker County School District,*
    872 F.3d 1209 (11th Cir. 2017) ..................................................56

*Board of Airport Commissioners v. Jews for Jesus, Inc.,*
    482 U.S. 569 (1987)....................................................................31

*CFTC v. Wilshire Investment Management Corp.,*
    531 F.3d 1339 (11th Cir. 2008) ..................................................16

*Chickasaw Nation v. United States,*
    534 U.S. 84 (2001)................................................................29, 30

*Citizens United v. FEC,*
    558 U.S. 310 (2010)....................................................................42

*City of Montgomery v. Town of Pike Road,*
    35 So.3d 575 (Ala. 2009).............................................................28

*Cornelio v. Connecticut,*
    32 F.4th 160 (2d Cir. 2022) ........................................................50

*Dana's Railroad Supply v. Attorney General*,
807 F.3d 1235 (11th Cir. 2015) ....................................37

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020)......................................................30

*Dimmitt v. City of Clearwater*,
985 F.2d 1565 (11th Cir. 1993) ....................................34

*Doe v. Cooper*,
842 F.3d 833 (4th Cir. 2016) .........................22, 48, 51

*Elrod v. Burns*,
427 U.S. 347 (1976)......................................................41

*Ex parte Birmingham Airport Authority*,
274 So.3d 964 (Ala. 2018)............................................26

*Ex parte Waddail*,
827 So.2d 789 (Ala. 2001)............................................25

*Ex parte Triad of Alabama*,
2024 WL 295247 (Ala. Jan. 26, 2024) .........................31

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021)......................................................31

*Florida ex rel. Shevin v. Exxon Corp.*,
526 F.2d 266 (5th Cir. 1976) .......................................40

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
11 F.4th 1266 (11th Cir. 2021)........................41, 48, 49

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
901 F.3d 1235 (11th Cir. 2018) ....................................16

*Gaines v. Wardynski*,
871 F.3d 1203 (11th Cir. 2017) ....................................21

*Gilmour v. Gates, McDonald & Co.*,
382 F.3d 1312 (11th Cir. 2004) ....................................42

v

*Hodgkins ex rel. Hodgkins v. Peterson*,
355 F.3d 1048 (7th Cir. 2004) ...........................................................22, 48, 54

*Honeyfund.com Inc. v. Governor*,
94 F.4th 1272 (11th Cir. 2024) ....................................................................56

*Horton v. Alexander*,
977 So.2d 462 (Ala. 2007).............................................................................30

*Howard v. Kinley-Horn & Associates, Inc.*,
2021 WL 4452536 (11th Cir. Sept. 29, 2021)..............................................40

*Lady J. Lingerie, Inc. v. City of Jacksonville*,
176 F.3d 1358 (11th Cir. 1999) ....................................................................46

*McCullen v. Coakley*,
573 U.S. 464 (2014).................................................................................46, 50

*McGuire v. Marshall*,
50 F.4th 986 (11th Cir. 2022) .......................................................................23

*McMahan v. Toto*,
311 F.3d 1077 (11th Cir. 2002) ....................................................................41

*McWhorter v. State Board of Registration for Professional Engineers*
*& Land Surveyors ex rel. Baxley*, 359 So.2d 769 (Ala. 1978) .....................28

*Moody v. NetChoice, LLC*,
144 S.Ct. 2383 (2024)...........................................................24, 32, 33, 46, 47

*New York State Club Ass'n v. City of New York*,
487 U.S. 1 (1988)...........................................................................................35

*Ortiz v. Breslin*,
142 S.Ct. 914 (2022)......................................................................................53

*Packingham v. North Carolina*,
582 U.S. 98 (2017).............................................................................20, 21, 47

*Pinigis v. Regions Bank*,
977 So.2d 446 (Ala. 2007).............................................................................27

*R.E.H. v. C.T.*,
   327 So.3d 248 (Ala. Civ. App. 2020)............................................................27

*Redding v. Coloplast Corp.*,
   104 F.4th 1302 (11th Cir. 2024)................................................................40

*Roman Catholic Diocese v. Cuomo*,
   592 U.S. 14 (2020)..................................................................................21

*Sapuppo v. Allstate Floridian Insurance Co.*,
   739 F.3d 678 (11th Cir. 2014)..................................................................55

*Secretary of State of Maryland v. Joseph H. Munson Co.*,
   467 U.S. 947 (1984)................................................................................34

*Speech First, Inc. v. Cartwright*,
   32 F.4th 1110 (11th Cir. 2022)................................................................37

*Steffel v. Thompson*,
   415 U.S. 452 (1974)................................................................................54

*Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile*,
   83 F.4th 922 (11th Cir. 2023)..................................................................53

*Turner Broadcasting System, Inc. v. FCC*,
   512 U.S. 622 (1994)..........................................................................49, 50

*United States v. Albertini*,
   472 U.S. 675 (1985)................................................................................49

*United States v. Bobal*,
   981 F.3d 971 (11th Cir. 2020)............................................................51, 52

*United States v. Hansen*,
   599 U.S. 762 (2023)................................................................................36

*United States v. National Treasury Employees Union*,
   513 U.S. 454 (1995)................................................................................55

*United States v. O'Brien*,
   391 U.S. 367 (1968)..........................................................................46, 48

*United States v. Stevens,*
    559 U.S. 460 (2010)........................................................24, 34

*United States v. Washington,*
    724 F.App'x 928 (11th Cir. 2018)....................................39

*Vibe Micro, Inc. v. Shabanets,*
    878 F.3d 1291 (11th Cir. 2018)........................................45

*Virginia v. American Booksellers Ass'n,*
    484 U.S. 383 (1988)..........................................................31

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989)..........................................................49

*Weiland v. Palm Beach County Sheriff's Office,*
    792 F.3d 1313 (11th Cir. 2015).................................16, 44

*Weiss v. City of Gainsville,*
    462 F.App'x 898 (11th Cir. 2012)....................................41

*Young Israel of Tampa, Inc. v. Hillsborough Area Regional Transit Authority*, 89 F.4th 1337 (11th Cir. 2024).............................55, 56

## STATUTES AND RULES

25 U.S.C. §2719...........................................................................29

Ala. Code
    §13A-2-2.......................................................................39
    §13A-5-6.........................................................................7
    §15-20A-1........................................................................4
    §15-20A-1-48..................................................................4
    §15-20A-3........................................................................5
    §15-20A-4.................................... 6, 7, 25, 26, 28, 30, 37, 38
    §15-20A-5.....................................................................4, 7
    §15-20A-6........................................................................7
    §15-20A-7........................................................................5
    §15-20A-11...................................4, 5, 6, 7, 24, 37, 39

2015 Alabama Laws Act 2015-463 (H.B. 316).........................6

2017 Alabama Laws Act 2017-414 ..........................................6

viii

Federal Rules of Civil Procedure
    Rule 8 .........................................................................................44
    Rule 10 .......................................................................................44

## OTHER SOURCES

Supplemental Response Brief of Appellee/Cross-Appellant State Officials,
    No. 15-10958, *McGuire v. Marshall* (11th Cir. Aug. 9, 2017) ....................36

# INTRODUCTION

Sections 11(a) and (d) of the Alabama Sex Offender Registration and Community Notification Act ("ASORCNA"), referred to collectively as the "Residency Provision," go far beyond regulating where registrants live and significantly curtail plaintiffs' rights to exercise their religion, participate in civic life, and gather with their loved ones. That is because when the Legislature amended ASORCNA in 2017, it defined "reside" and "overnight visit" so expansively that the statute now prohibits registrants from, among other things, spending more than four hours a day at church three days in a row, or ten days total in a calendar month, and from spending even one minute past 10:30pm at a political rally or family event where any individual under eighteen is present. To plaintiffs' knowledge, Alabama is the only state with a sex-offender-residence restriction that sweeps so broadly.

By restricting access to countless First Amendment activities, the Residency Provision chills protected expression by plaintiffs and thousands of other registrants on pain of felony prosecution. And it does so for life even though many registrants like plaintiffs were never convicted of crimes involving children or adjudged to pose a risk of recidivism and have no other criminal conviction than the decades-old one for which they already served their time. The district court

correctly held that such statutory overbreadth and lack of tailoring violate the First Amendment.

Plaintiffs—three ASORCNA registrants—all have religious functions they would attend and family members they would spend time with if the Residency Provision did not stand in their way. But Section 11(a) of ASORCNA prohibits them from residing within 2,000 feet of any school, childcare facility, or resident camp. And as of 2017, the statute defines "reside" to include spending more than four hours a day at a given place for three consecutive days or ten total days in a calendar month. Independently, and in addition, Section 11(d) of ASORCNA prohibits registrants from spending *any time* between 10:30pm and 6:00am at a place where anyone under eighteen is present. Violations of these restrictions are punishable by up to ten years in prison.

The district court correctly recognized that the Residency Provision's unequivocal text compels facial relief because valid applications of the statute to a registrant's home pale in comparison to its invalid applications to the innumerable First Amendment activities it restricts outside the home. At a minimum, the statute's application to plaintiffs' circumstances is not narrowly tailored and burdens substantially more expression than necessary to further the government's legitimate interests.

Defendants' efforts to defend the Residency Provision require ignoring its plain meaning and binding precedent of the Supreme Court and this Court. The fact that the statute does not target expression cannot save its restrictions on registrants' access to public and associational forums and the resulting infringements of vast amounts of protected expression. Nor can defendants narrow the Residency Provision's unconstitutional reach by rewriting its text. That prerogative belongs to the Alabama Legislature, and the Legislature spoke clearly in defining "reside" to include being present at a location beyond specified limits, regardless of whether it is the registrant's actual residence or a church, political rally, or family gathering. In holding the Residency Provision unconstitutional as applied to plaintiffs, the district court used the correct legal standard for intermediate scrutiny, and defendants have not carried their burden to demonstrate the narrow tailoring required to withstand that scrutiny. The court's remedial order declaring the Residency Provision unconstitutional facially and as applied, and enjoining its enforcement against plaintiffs, was proper.

This Court should affirm the district court's judgment.

## JURISDICTIONAL STATEMENT

Plaintiffs agree with defendants' jurisdictional statement. Defendants' Brief ("Br.") 3.

## STATEMENT OF THE ISSUES

1.    Did the district court correctly hold that Sections 11(a) and (d) are
      substantially overbroad and thus facially unconstitutional?

2.    Did the district court correctly hold that Sections 11(a) and (d) are
      insufficiently tailored and unconstitutional as applied to plaintiffs?

3.    Was the district court's remedy proper?

## STATEMENT OF THE CASE

### A.    ASORCNA's Residency Provision

ASORCNA governs the lives and conduct of individuals living in Alabama
who have been convicted of any of a wide range of sex offenses.  *See* Ala. Code
§15-20A-1-48.  Individuals convicted of a qualifying crime—from first-degree
rape to indecent exposure, *see id.* §15-20A-5—must register with the State.  *Id.*
§15-20A-1.  This registration requirement applies even to individuals who were
convicted of crimes in other states that did not themselves require registration.  *Id.*
§15-20A-5(39).

All registrants—regardless of their age, crime of conviction, or length of
time conviction-free—must comply with a host of duties and prohibitions imposed
by the statute.  These impositions exist not as part of a registrant's sentence.
Rather, failure to abide by any of ASORCNA's requirements constitutes a separate
offense.  *E.g.*, Ala. Code §15-20A-11(i).  Oftentimes, these new offenses are

felonies.  *E.g.*, *id.* §15-20A-7(f) (failure to provide any of the 19 enumerated subcategories of required registration information is a Class C felony).  With few exceptions, ASORCNA's requirements apply to registrants "for life."  *Id.* §15-20A-3(b).  And the statute lacks virtually any "mechanism to evaluate individualized dangerousness, risk of recidivism, the range of seriousness of the underlying facts of a conviction, or changed circumstances post-conviction."  Doc.138 at 10.

ASORCNA's impositions are so wide-ranging and long-lasting that the district court here characterized ASORCNA as "the most comprehensive and debilitating sex-offender scheme in the nation."  Doc.138 at 7.  This appeal concerns a particular set of restrictions, centered at Ala. Code §15-20A-11, known as the "Residency Provision."

The Residency Provision consists of several interlocking statutory subsections and definitions.  The most important of these are §15-20A-11(a) and §15-20A-11(d), which the district court referred to as "Section 11(a)" and "Section 11(d)," respectively.  These provisions read, in relevant part:

> (a) No adult sex offender shall establish a residence or maintain a residence after release or conviction within 2,000 feet of the property on which any school, childcare facility, or resident camp facility is located unless otherwise exempted pursuant to Sections 15-20A-23 and 15-20A-24.
>
> …

(d)  No adult sex offender shall reside or conduct an overnight visit with a minor.[1]

ASORCNA elsewhere defines three key terms in the above provisions: "residence," "reside," and "overnight visit."  These definitions have changed over time.  Originally, ASORCNA did not define "reside" or "overnight visit," and it defined "residence" to mean:

> [A] place where a person resides, sleeps, or habitually lives or will reside, sleep, or habitually live.  If a person does not reside, sleep, or habitually live in a fixed residence, residence means a description of the locations where the person is stationed regularly, day or night, including any mobile or transitory living quarters or locations that have no specific mailing or street address.  Residence shall be construed to refer to the places where a person resides, sleeps, habitually lives, or is stationed with regularity, regardless of whether the person declares or characterizes such place as a residence.

2015 Ala. Laws Act 2015-463 (H.B. 316).

In 2017, however, the Legislature enacted comprehensive amendments to ASORCNA.  *See* 2017 Ala. Laws Act 2017-414.  Following those amendments, ASORCNA defines "residence" as a "place where the person *resides*, regardless of whether the person declares or characterizes such place as a residence."  Ala. Code §15-20A-4(21) (emphasis added).  And it defines "reside" as:

> To be habitually or systematically present at a place.  Whether a person is residing at a place shall be determined by the totality of the circumstances, including the amount of time the person spends at the place and the nature of the person's conduct at the place.  *The term*

_____
[1] Section 11(d)'s ban on overnight visits with a minor is subject to various exceptions not relevant here.  *See* Ala. Code §15-20A-11(d).

*reside includes, but is not limited to, spending more than four hours a day at the place on three or more consecutive days; spending more than four hours a day at the place on 10 or more aggregate days during a calendar month; or spending any amount of time at the place coupled with statements or actions that indicate an intent to live at the place or to remain at the place for the periods specified in this sentence.* A person does not have to conduct an overnight visit to reside at a place.

Ala. Code §15-20A-4(20) (emphasis added). The district court referred to the italicized sentence as the "aggregate-time list." Doc.138 at 51. Finally, ASORCNA defines an "overnight visit" as "[a]ny presence between the hours of 10:30 p.m. and 6:00 a.m." Ala. Code §15-20A-4(14).

Registrants who fail to comply with the Residency Provision face significant consequences. A knowing violation of any part of the Residency Provision is a Class C felony, *id.* §15-20A-11(i)—a more severe class of felony than several sex offenses that compel registration, *see, e.g.*, *id.* §§15-20A-5(41), -6(a)(1). Class C felonies carry sentences of one to ten years in prison. *Id.* §13A-5-6(a)(3).

### B. The Residency Provision's Restrictions On Plaintiffs' Activities

1. Plaintiff Michael McGuire was convicted in Colorado in 1986 of sexually assaulting his 30-year-old girlfriend. *See* Doc.123-8. He has never been convicted of another crime. *See* Doc.120-6. After serving his sentence, McGuire spent more than 15 years working as a hairdresser and musician in the Washington, D.C. area, where he was not required to register as a sex offender. *See* Doc.123-9 at 22:22-24:19. In 2010, McGuire and his wife moved to Montgomery, Alabama,

to live with McGuire's mother. *See id.* at 25:11-17. Upon arriving in Alabama, McGuire registered as a sex offender and was forced to leave his mother's home because it was not compliant with ASORCNA's residency restrictions. *See id.* at 25:20-26:19.

McGuire's fear of violating the Residency Provision has profoundly impacted his family, worship, and civic engagement. McGuire limits his visits with his wife for fear of "establish[ing] a residency" at her non-compliant home. Doc.123-9 at 88:1-8. The limits on their time together have, in his wife's words, "broken up the foundation of [their] marriage." Doc.123-10 at 46:6-10. McGuire also frequently misses time at family gatherings to avoid being near his minor relatives between 10:30pm and 6:00am, *see* Doc.123-15 ¶¶22-23, and McGuire's family has "chosen to forfeit time together with [McGuire] to make sure he does not violate the law and [get] arrested," *id.* at ¶25.

McGuire wants to attend church and participate in music ministry so that he can "live like a first-class human being," Doc.123-9 at 49:22-50:11, and "get some strength and some faces and joy," *id.* at 80:14-16. But he does neither for fear of being deemed to have established a residence at the church. *See id.* at 47:21-22. An officer at Montgomery County's Sex Offender Unit told McGuire that he could be "subject to arrest if [he] attend[s] church habitually or systematically." *See* Doc.123-11 at 6. If not for his fear of criminal liability, McGuire would attend

8

church every Sunday, attend Bible study, "join the music ministry," and "participate in the men's ministry."  Doc.123-9 at 86:12-19.

McGuire also limited his attendance at a four-day political rally to avoid establishing a residence at the rally location.  *See* Doc.123-9 at 90:2-91:10.  The rally was related to the Black Lives Matter movement, and McGuire wanted "to know a little bit more about Black Lives Matter" in the wake of "the George Floyd situation," but McGuire only attended on one day because "there w[ere] a lot of police there," and he "didn't want to get arrested" for "habitual[] and systematic" presence.  *Id.*

2.     Plaintiff JEB was convicted in Alabama in 1987 of sodomizing a 30-year-old male.  *See* Doc.123-16 at 32, 38-52.  After his release from prison in 2011, JEB registered as a sex offender under ASORCNA.  *See* Doc.123-5 at 14:14-17.

JEB misses significant family time due to ASORCNA.  He and his sister would like to live together, but they cannot because JEB's sister has minor grandchildren who stay with her overnight during the week.  *See* Doc.123-5 at 20:12-13; Doc.123-20 at 18:7-12, 20:3-22:18.  Whenever JEB's family has a gathering, JEB "can't be around his family like … the average person"; for example, he "never stay[s] … at night" when underage children are present, and he is generally "restricted [from] being around."  Doc.123-21 at 15:22-17:9.  JEB's

sister describes this situation as "frustrating" and "heartbreaking." *Id.* at 16:22, 17:9.

JEB used to attend church almost daily, *see* Doc.123-5 at 132:8-14, and wishes to "worship [at church], haul food in and out of there, [and] pass out food to people," *id.* at 44:6-8. But he now limits his church attendance due to fear of arrest for violating the Residency Provision. *See id.* at 38:14-39:10, 138:2-5. He is "fearful that [he] w[ill] be arrested" if he goes to church "12 times a month," and he was "told [he] couldn't go there by law enforcement." *Id.* at 138:6-20.

3. Plaintiff KLL was convicted in Louisiana in 2012 of contributing to the delinquency of a juvenile due to having a sexual relationship with his sixteen-year-old girlfriend when he was nineteen years old. Doc.123-22 at 67-79. He has not been convicted of any crimes since. Doc.123-4 at 339:2-6. KLL was not required to register as a sex offender in Louisiana, *see* Doc.123-22 at 1-4, but upon moving to Alabama in 2015, he was required to register as a sex offender under ASORCNA, *see id.* at 111.

Like McGuire and JEB, KLL limits his family activities to avoid violating the Residency Provision. KLL has at least thirty-five minor relatives that he "want[s] to have overnight visits with but can't because of ASORCNA." Doc.123-4 at 210:11-19. He sometimes sleeps in his car when minor family members visit for fear of violating the Residency Provision. *See id.* at 124:10-12, 382:6-9. On

other occasions, he remains at his home while his minor family members sleep in the car elsewhere.  *See id.* at 216:20-217:3.

KLL has attended church for more than four hours per day on more than ten days in each month "every month for [his] whole life."  Doc.123-4 at 143:22-23. "Almost every single time" he went to church, he stayed for over four hours, *id.* at 140:8-141:18, and his Bible studies also often last more than four hours, *see id.* at 146:17-23.  KLL now rarely goes to church because he is afraid of violating the Residency Provision.  *See id.* at 182:11-22.  He was told by law enforcement that if he attended church too often, "it would become habitual," and he "would have to register it as an address."  *Id.* at 374:20-375:1.  KLL cannot "register [his] church as [his] address," because "[t]here's a school … probably 200 feet from it … at the end of the street."  *Id.* at 379:12-22.

## C. District-Court Proceedings

1.  McGuire filed his first complaint in March 2019, challenging the constitutionality of various ASORCNA provisions on multiple grounds.  Doc.1. Count 4 of the complaint alleged that the Residency Provision violated the First Amendment both "[f]acial[ly] and [a]s-applied" to McGuire.  *Id.* at 42.  McGuire twice amended his complaint, including by adding JEB and KLL as plaintiffs in the second amended complaint.  *See* Doc.9; Doc.31.  The district court in January 2021 granted in part and denied in part defendants' motion to dismiss the second

amended complaint. *See* Doc.55. As relevant here, the district court permitted plaintiffs' First Amendment claim to proceed, concluding that plaintiffs had plausibly alleged statutory "overbreadth," *id.* at 86, and that there were "several reasons to doubt" the statute was "narrowly tailored," *id.* at 89.

The court's description of the First Amendment challenge to the Residency Provision likewise reflected the dual nature of plaintiffs' claim. In particular, the court characterized Count I as "alleg[ing] that ASORCNA is facially overbroad *and* impermissibly infringes upon *Plaintiffs'* freedoms of speech and expressive conduct under the First Amendment." Doc.55 at 20 (emphases added). And in describing the standard of review for plaintiffs' claim, the court observed that defendants must "prov[e] that Alabama narrowly tailored ASORCNA's residency restrictions so as to not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Id.* at 89.

In January 2022, plaintiffs filed their now-operative fourth amended complaint. *See* Doc.88. As relevant here, Count I—titled "Overbreadth – Facial and As Applied Challenge," *id.* at 59—alleges that ASORCNA "impermissibly infringes upon Plaintiff[s'] and registrants' First Amendment speech and expressive conduct and lacks proper tailoring." *Id.* at 60. Plaintiffs sought a declaration that the Residency Provision is invalid both "facially and as applied to

Plaintiffs" under the First Amendment, and asked the court to "enjoin[] the State's enforcement" of the Residency Provision. *Id.* at 66.

2.    Following discovery, both parties sought summary judgment. Doc.122; Doc.124.  On May 23, 2024, the district court issued a thorough opinion granting summary judgment to plaintiffs on their claim challenging the constitutionality of the Residency Provision and granting summary judgment to defendants on the remaining claims.  Doc.138.  Only the former decision is at issue on appeal.

With respect to the Residency Provision, the court (after rejecting several threshold defenses) held that Sections 11(a) and (d), individually and together, were substantially overbroad and thus facially invalid, and that those same provisions were invalid as applied to plaintiffs because they were insufficiently tailored to achieve Alabama's legitimate interest in protecting children.  *See* Doc.138 at 44-107.  The court began its overbreadth analysis by determining what exactly the Residency Provision prohibited.  Relying on the statute's plain text, the court noted that the aggregate-time list in ASORCNA's definition of "reside" "provides three clear, concrete examples of when a registrant always resides somewhere … based on time alone, irrespective of any [other] information." *Id.* at 54.  The court further noted that, under ASORCNA's definition of "overnight visit," "the presence of a minor is sufficient to conduct an 'overnight visit with that

minor—even if the registrant is present for only a minute, does not spend the night, does not communicate with the minor, and is never alone with the minor." *Id.* at 56. The court acknowledged that the definition of "reside" also includes a "totality of the circumstances" test, but it noted that "the aggregate-time list simply provides a legislatively determined list of examples where the totality-of-the-circumstances test is necessarily met." *Id.* at 59.

After analyzing the Residency Provision's scope, the court concluded that ASORCNA's definitions of "reside" and "overnight visit" are "overinclusive and substantially burden[] expressive activity," Doc.138 at 66, and that the Residency Provision's "impermissible applications also greatly outweigh [its] permissible applications," *id.* at 80. As the court explained, the Residency Provision "implicates rights at the heart of the First Amendment" by "categorically time-limit[ing] registrants from accessing any and all forums of expressive conduct and therein engaging in First Amendment activity." *Id.* at 75. Indeed, the court concluded that "the impermissible applications of section 11(a) and section 11(d) swamp the permissible applications given the overinclusive way 'reside' and 'overnight visit' are defined." *Id.* at 84.

For similar reasons, the court concluded that the Residency provision lacks proper tailoring. Rejecting defendants' threshold argument that such a theory had not been pled, the court found that plaintiffs' pleadings and briefing and the court's

motion-to-dismiss ruling all identified a narrow-tailoring claim "distinct" from plaintiffs' facial-overbreadth claim. Doc.138 at 89 n.37. On the merits, the court determined that defendants failed to "show that the residency provision is narrowly tailored" or that "alternative measures that burden substantially less speech would fail to achieve the government's interests." *Id.* at 106. The court found that the "inexplicably broad definitions of 'reside' and 'overnight visit' are fatal to the legitimacy of the provisions and the adequacy of their tailoring," and that the Residency Provision also "fail[s] narrow tailoring for several additional reasons." *Id.* at 95. These reasons, the court explained, include that the Residency Provision "lumps all sex offenders together … based on the conviction alone," *id.* at 96; imposes "lifetime, non-appealable prohibitions," *id.* at 97; and does not account for "individual circumstances pre- or post-conviction," *id.* at 98.

3.     Along with its summary-judgment decision, the district court issued a final judgment detailing its remedial orders for each of the constitutional violations. The Residency Provision was "declared unconstitutional in all applications" due to the law's "overbroad aspects," but the court deferred the effective date of that facial relief until "September 1, 2024." Doc.139 at 1, 3. The court also issued declaratory and injunctive relief, "[e]ffective immediately," against enforcement of the Residency Provision "as applied to plaintiffs" because the Residency Provision "lacks adequate tailoring." *Id.* at 3-4.

Defendants twice sought and were denied a stay of the injunction in the district court.  Doc.146; Doc.151; Doc.152; Doc.156.  This Court later stayed the district court's remedial orders except that it left in place "the district court's order enjoining the enforcement of Ala. Code §15-20A-11(d)(4) as applied to the plaintiffs."  CoA.Doc.32.

## STANDARDS OF REVIEW

This Court reviews *de novo* the district court's grant of summary judgment. *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1239 (11th Cir. 2018).  The district court's application of the shotgun pleading rules to plaintiffs' narrow-tailoring claim is an exercise of its "inherent authority to control its docket," which this Court reviews only for "abuse of discretion."  *Weiland v. Palm Beach County Sherriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).  Both the "district court's choice of an equitable remedy and the grant of a permanent injunction" are likewise reviewed for "abuse of discretion."  *CFTC v. Wilshire Investment Management Corp.*, 531 F.3d 1339, 1343 (11th Cir. 2008).

## SUMMARY OF THE ARGUMENT

I.     The Residency Provision implicates the First Amendment because it bars registrants from accessing vital forums for expression and association, including churches, political rallies, and family gatherings.  The First Amendment protects access to such forums.  Defendants rely on cases addressing loss of First

Amendment freedoms as part of criminal punishment. But the Residency Provision does not restrict registrants' access to First Amendment forums as part of their sentences; it criminalizes their repeated presence in those forums as a new and separate crime, directly inhibiting registrants' exercise of their First Amendment rights.

II.     Sections 11(a) and (d) are each substantially overbroad and therefore facially invalid under the First Amendment.

The district court correctly interpreted the Residency Provision. By its plain terms, the statute bars registrants from spending four hours at a given place on three consecutive days or ten total days in a month, on pain of committing a felony punishable by up to ten years in prison if that place is located within 2,000 feet of any school, childcare facility, or resident camp. The statute also bars registrants from spending any time at any place with someone under the age of eighteen between the hours of 10:30pm and 6:00am. Defendants' arguments against the district court's interpretation of the Residency Provision's expansive definition of "reside" and "overnight visit" are unavailing because they all contravene the statute's plain text and the 2017 legislative amendments intentionally expanding its scope.

Properly interpreted, the Residency Provision forecloses registrants from a vast amount of First Amendment activity, from regular worship to core political

speech to intimate association. These unconstitutional applications significantly outnumber the statute's valid applications regulating where a registrant actually lives. That vast disparity between invalid and valid applications and the resulting risk of chilling significant amounts of protected speech rightly led the district court to hold that Sections 11(a) and (d) are substantially overbroad and thus facially invalid.

Certification to the Alabama Supreme Court is neither necessary nor appropriate. The one state-law issue in dispute—how to define "reside"—is readily answered by the statute's text. And because the parties do not disagree about how to interpret the term "overnight visit," this Court will still be required to determine the constitutionality of Section 11(d). Waiting to resolve that question until certification proceedings are complete would unjustly force plaintiffs to live under an unconstitutional regime.

III. Sections 11(a) and (d) are also unconstitutional as applied to plaintiffs because each provision fails intermediate scrutiny under the First Amendment.

Plaintiffs' entitlement to as-applied relief was properly before the district court. As this Court has held, a request for as-applied relief is *not* a separate claim from a facial challenge to a law. Regardless, the operative complaint's repeated references to challenging the Residency Provision both facially and as applied to plaintiffs—together with the express allegation that the Residency Provision lacks

proper tailoring—gave defendants notice of both aspects of the First Amendment challenge that plaintiffs brought and the court decided.

Preventing sexual abuse of children is assuredly an important interest, but ASORCNA's definitions of "reside" and "overnight visit" sweep in substantially more speech than necessary. Nothing in the record explains why individuals who have never been convicted of a crime against a child and have a decades-long history of no criminal activity of any type must be prevented from spending even one minute past 10:30pm at a political, church, or family event where anyone under eighteen is present. The unjustifiable lack of fit between the statute's means and asserted ends render the Residency Provision unconstitutional as to plaintiffs.

IV.    The district court's remedy for each of these constitutional violations was appropriate. Under the overbreadth doctrine, statutory provisions like Sections 11(a) and (d) that are substantially overbroad are facially unconstitutional. Facial declaratory relief is appropriate to remedy the nature of that constitutional violation.

Likewise, the district court's decision to enjoin the Residency Provision as applied to plaintiffs, based on lack of proper tailoring, was well within the court's broad remedial discretion for that separate constitutional violation. The permanent-injunction factors support such relief here. Under long-standing precedent, loss of First Amendment freedoms constitutes irreparable injury for

which remedies at law are inadequate. Being enjoined from enforcing an unconstitutional law does not harm defendants, and it plainly serves the public interest.

## ARGUMENT

## I.     THE RESIDENCY PROVISION IMPLICATES FIRST AMENDMENT ACTIVITY

Attempting to avoid First Amendment scrutiny, defendants argue (Br.14) that the Residency Provision does not implicate the First Amendment because it only "direct[ly] regulat[es] … nonexpressive activity." The "fundamental principle of the First Amendment … that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more," *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017), forecloses that argument.

In *Packingham*, the Supreme Court held that a North Carolina law forbidding registered sex offenders' presence on certain social media websites violated the First Amendment. *Id.* at 108. As with the Residency Provision, the North Carolina law did not directly regulate registrants' speech. Rather, it forbade registrants from "access[ing] a commercial social networking Web site where the sex offender knows that the site permits minor children" to join. *Id.* at 101. The Court nevertheless had no trouble recognizing "the right to speak in [a] spatial context," *id.* at 104, explaining that "[e]ven convicted criminals—and in some instances especially convicted criminals—might receive legitimate benefits from

these means for access to the world of ideas, in particular if they seek to reform and to pursue lawful and rewarding lives." *Id.* at 104, 108.

Here, by barring registrants from attending church, rallies, and family gatherings for periods beyond the aggregate-time list, the Residency Provision severely restricts registrants' religious exercise, political speech, and intimate association. *Infra* pp.25-32. *Packingham* makes clear that preventing access to forums for expression implicates the First Amendment. The Supreme Court has likewise held that limiting "personal attendance" at religious services implicates the First Amendment. *Roman Catholic Diocese v. Cuomo*, 592 U.S. 14, 19 (2020). And limiting visits with close family members implicates the First Amendment under this Court's precedent, which holds that "[t]he First Amendment protects … [t]he right of intimate association." *Gaines v. Wardynski*, 871 F.3d 1203, 1212 (11th Cir. 2017).

Defendants' sole response to *Packingham* is to wrongly claim (Br.14-15) that plaintiffs "can engage in expressive activity wherever they like so long as they don't cross the commonsense line from merely engaging in expression to *residing* at that place." The Residency Provision, however, does not adopt defendants' "commonsense line," but instead expressly defines "reside" to include presence for four hours on three consecutive days or ten total days in a month at any given place, whether it is a home, church, or political rally. *Supra* pp.6-7. Indeed, as

written, the aggregate-time list bars registrants from accessing several forums for expression, simply by virtue of the length and frequency of their participation. *Infra* pp.25-32.

Defendants' threshold argument also ignores Section 11(d)'s ban on overnight visits between registrants and minors. Given ASORCNA's expansive definition of "overnight visit," the district court correctly recognized that Section 11(d) "is functionally a curfew law [that] broadly limits registrants' ability to go out in public." Doc.138 at 76; *see infra* pp.38-39. Such laws implicate the First Amendment because "[b]eing out in public is a necessary precursor to almost all public forums for speech, expression, and political activity." *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1059 (7th Cir. 2004); *accord Doe v. Cooper*, 842 F.3d 833, 845 (4th Cir. 2016) ("Subsection (a)(2) burdens the First Amendment rights of all restricted sex offenders 'by inhibiting the[ir] ability … to go to a wide variety of places associated with First Amendment activity.'").

Defendants' principal authority, *Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986), is inapposite. *Arcara* held that "criminal and civil sanction[s]" face First Amendment scrutiny "only where it was conduct with a significant expressive element that drew the legal remedy in the first place, … or where a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity." *Id.* at 706-707. The criminal sanction in *Arcara*—closure of

a bookstore because the same premises were used as a place of prostitution, *id.* at 698—passed First Amendment muster because prostitution is not expressive and the law authorizing the closure did not single out bookstores. *Id.* at 707. Unlike the law in *Arcara*, however, the Residency Provision is *not* punishment for committing sexual offenses, as this Court itself reasoned in rejecting an *Ex Post Facto* Clause challenge to the Residency Provision. *See McGuire v. Marshall*, 50 F.4th 986, 1008 (11th Cir. 2022). Rather, the Residency Provision is one of several duties ASORCNA imposes on registrants *after* they complete their sentences. *Supra* p.4. For example, if plaintiffs were to attend a church service, political rally, or family gathering at the wrong time of day or for periods in excess of the aggregate time limits, they could face prosecution for violating the Residency Provision based solely on their presence at an expressive forum, not on their underlying sex-offense conviction. That is nothing like *Arcara*, where the criminal conduct was the non-expressive act of maintaining a place of prostitution. Defendants are therefore wrong in claiming (Br.11) that plaintiffs' position would require "every prison sentence … to meet First Amendment scrutiny."

## II.   SECTIONS 11(a) AND 11(d) OF THE RESIDENCY PROVISION ARE EACH FACIALLY UNCONSTITUTIONAL

The Supreme Court has long recognized that statutes criminalizing First Amendment activities may "chill protected speech," even if those same laws may be constitutionally applied in certain scenarios. *Ashcroft v. Free Speech Coalition*,

535 U.S. 234, 244 (2002). And "the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted." *Id.* at 255. To ensure the necessary "breathing room for free expression," *Moody v. NetChoice, LLC*, 144 S.Ct. 2383, 2397 (2024), "a law may be [facially] invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep,'" *United States v. Stevens*, 559 U.S. 460, 473 (2010). The district court correctly concluded that Sections 11(a) and 11(d) are each substantially overbroad. Doc.138 at 84. Defendants' rejoinders misread Sections 11(a) and 11(d) and are meritless.

The two-step process for resolving facial First Amendment challenges requires courts to (1) "assess the state law's scope" and then (2) "decide which of the law's applications violate the First Amendment, and … measure them against the rest." *Moody*, 144 S.Ct. at 2398. If a "law's unconstitutional applications substantially outweigh its constitutional ones," that law "may be struck down in its entirety." *Id.* at 2397. This two-step analysis of Sections 11(a) and 11(d) confirms that each provision is facially unconstitutional.

### A. Section 11(a) Is Substantially Overbroad

Under Section 11(a) of the Residency Provision, registrants may not (with certain exceptions not relevant here) "establish … or maintain a residence …

within 2,000 feet of the property on which any school, childcare facility, or resident camp facility is located." Ala. Code §15-20A-11(a). Recall that a person's residence is simply "where the person resides." *Id.* §15-20A-4(21). And, per ASORCNA's statutory definition, a registrant resides at any location in which he spends four or more hours for three consecutive days or ten total days in a month. *Id.* §15-20A-4(20). By interpreting the definition of "reside" to mean what it says, the district court correctly concluded that Section 11(a)'s prohibition is substantially overbroad.

### 1. The circumstances in the aggregate-time list suffice, on their own, to establish a residence

a.    Courts interpreting Alabama statutes "must determine and give effect to the intent of the legislature as provided in the text of the statute." *Ex parte Waddail*, 827 So.2d 789, 794 (Ala. 2001). The full definition of "reside" is quoted above, pp.6-7, but the critical language—the aggregate-time list—says the following:

> The term reside includes, but is not limited to, spending more than four hours a day at the place on three or more consecutive days; spending more than four hours a day at the place on 10 or more aggregate days during a calendar month; or spending any amount of time at the place coupled with statements or actions that indicate an intent to live at the place or to remain at the place for the periods specified in this sentence.

Ala. Code §15-20A-4(20). This text could not be plainer. The aggregate-time list provides three examples, each of which are "include[d]" within "[t]he term reside."

*Id.*  And the third scenario in the aggregate-time list, with its focus on "intent to live … or to remain at the place *for the periods specified in this sentence*," *id.* (emphasis added), underscores the Legislature's intent to define "reside" in a way that automatically encompasses spending four hours at a given place for three consecutive days or ten total days in a month.

On its face, registrants who meet any of these three conditions with respect to a given property "reside" at the property.  "When the language of a statute is plain and unambiguous, as in this case, courts … must interpret that language to mean exactly what it says."  *Ex parte Birmingham Airport Authority*, 274 So.3d 964, 967 (Ala. 2018).  The district court did just that.

The 2017 amendments to ASORCNA confirm that the district court interpreted the aggregate-time list correctly.  Until those amendments, "reside" was not statutorily defined, and "residence" simply meant "a place where a person resides, sleeps, or habitually lives or will reside, sleep, or habitually live."  *Supra* p.6.  In 2017, the Legislature expanded the definition of "residence" to include not only a registrant's "fixed residence" but also any "other place where the person resides," and it defined "reside" for the first time to encompass, at a minimum, the three circumstances set forth in §15-20A-4(20).  Indeed, although the definition of "reside" includes part of ASORCNA's prior definition of "residence"—namely, "[t]o be habitually or systematically present at a place," *id.*—the Legislature did

not stop there.  Unlike the prior statute, which did not specify what sort of presence would necessarily cross the threshold of "residing" at a given place, the 2017 amendments gave examples, i.e., the aggregate-time list.  "By enacting an amendment of a statute and changing the language thereof, the Legislature is deemed to have intended a material change in the law." *Pinigis v. Regions Bank*, 977 So.2d 446, 452 (Ala. 2007).  In adding the aggregate-time list, the Legislature plainly intended to regulate where registrants could spend the amounts of time specified by statute.

The only published state-court appellate opinion interpreting the statutory definition of "reside" further supports the district court's interpretation.  As the district court noted, Doc.138 at 64, and defendants ignore, that case explained that ASORCNA "broadly defined" "reside" to bar registrants from "spending significant time at [a] home (*no more than 4 hours per day for 3 consecutive days or no more than 10 days in a month*)."  *R.E.H. v. C.T.*, 327 So.3d 248, 253 (Ala. Civ. App. 2020) (emphasis added).

b.     None of defendants' arguments for ignoring the plain meaning of the aggregate-time list has merit.

*First*, defendants claim (Br.19) that reading the aggregate-time list to provide a non-exhaustive list of scenarios that automatically satisfy the definition of "reside" would contradict the previous sentence of §15-20A-4(20), which states

27

that "[w]hether a person is residing at a place shall be determined by the totality of the circumstances." But there is no contradiction if one interprets the aggregate-time list as the Legislature clearly intended, i.e., as merely providing examples of when the totality-of-the-circumstances test is necessarily met. Defendants acknowledge (Br.20) "that one factor can sometimes meet a totality-of-the-circumstances test on its own." The aggregate-time list supplies such examples—spending four hours somewhere three consecutive days or ten total days in a month. Defendants' argument that a registrant might not reside at a given place under those circumstances requires rewriting the statute to eliminate unequivocal language that "[t]he term reside includes, but is not limited to," the examples from the aggregate-time list, Ala. Code §15A-20-4(20). That contravenes the "presumption that every word, sentence, or provision [of a statute] … has some force and effect." *City of Montgomery v. Town of Pike Road*, 35 So.3d 575, 584 (Ala. 2009).

*Second*, Defendants argue (Br.20) that the district court's interpretation of the aggregate-time list contradicts the ordinary meaning of the term "reside." "It is well recognized," however, "that when the Legislature defines the language it uses, its definition is binding upon the courts, even though this definition does not coincide with the ordinary meaning of the words used." *McWhorter v. State Board of Registration for Professional Engineers & Land Surveyors ex rel. Baxley*, 359

So.2d 769, 773 (Ala. 1978).  Thus, the ordinary meaning of "reside" is irrelevant because §15-20A-4(20) defines "reside" to include the situations specified in the aggregate-time list.

Nor does *Chickasaw Nation v. United States*, 534 U.S. 84 (2001), help defendants (Br.20-21).  In that case, the Supreme Court interpreted a provision of the Indian Gaming Regulatory Act requiring that Internal Revenue Code provisions "concerning the reporting and withholding of taxes with respect to winnings … shall apply to Indian gaming … in the same manner as such provisions apply to State gaming."  25 U.S.C. §2719(d)(1).  Section 2719(d)(1) contains a parenthetical list with five Code provisions as examples.  The first four address tax "reporting and withholding," but the fifth (chapter 35 of the Code) does not; rather, it *imposes* taxes, but then exempts state-owned gaming operations.  *Chickasaw*, 534 U.S. at 87.  Various tribes argued that by including the last example, Congress meant to go beyond §2719(d)(1)'s evident subject—tax reporting and withholding—to exempt Indian gaming operations from taxes imposed under chapter 35.  *Id.*  The Supreme Court disagreed.  *Id.* at 87-88.  As the Court explained, Congress's reference to chapter 35 was "simply a bad example— an example that Congress included inadvertently," no different from saying, "[t]est drive some cars, including Plymouth, Nissan, Chevrolet, Ford, and Kitchenaid." *Id.* at 90-91.

*Chickasaw*'s reasoning has no application to the aggregate-time list, which was a deliberate addition to ASORCNA, not "a drafting mistake." *Id.* at 91; *supra* pp.26-27. Nor is it necessary to "seriously rewrit[e] the language of the rest of" ASORCNA to "give the [aggregate-time list] independent operative effect," *id.* at 89, because the aggregate-time list can reasonably be read to illustrate §15-20A-4(20)'s "totality of the circumstances" test. *Supra* pp.25-26.

*Third*, Defendants contend (Br.21-22) that the district court should have construed "reside" to avoid the "absurd result" of "requir[ing] a sex offender to register his office, school, or church as residences." But the absurdity doctrine applies only if the result is one "the legislature could not possibly have intended." *Horton v. Alexander*, 977 So.2d 462, 468 (Ala. 2007). The addition of the aggregate-time list was plainly deliberate. *Supra* pp.26-27. Any doubts about its "reasonableness or ultimate wisdom" are matters for the Legislature and cannot be used to avoid "interpret[ing] that language to mean exactly what it says." *Alfa Mutual Insurance Co. v. City of Mobile*, 981 So.2d 371, 379 (Ala. 2007).

*Fourth*, Defendants invoke (Br.23) the canon of constitutional avoidance to urge a "limiting construction." But "[t]he avoidance doctrine 'has no application in the absence of ambiguity.'" *DHS v. Thuraissigiam*, 591 U.S. 103, 133 (2020). ASORCNA's direction that "[t]he term reside *includes*" spending the specified amounts of time at a place, Ala. Code §15-20A-4(20) (emphasis added), is not

ambiguous. Moreover, as the district court recognized, defendants "have not articulated what th[eir] narrowing construction would look like." Doc.138 at 61. And to the extent they now suggest the aggregate-time list describes factors in the statute's totality-of-the-circumstances test rather than situations in which that test is met, that rewrites ASORCNA. Courts must "not rewrite a state law to conform it to constitutional requirements." *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988). Here, "the words of [ASORCNA] simply leave no room for a narrowing construction." *Board of Airport Commissioners v. Jews for Jesus, Inc.* 482 U.S. 569, 575 (1987).

*Finally*, defendants argue (Br.18-19) that the aggregate-time list should be interpreted to exclude church or school attendance because the Residency Provision would otherwise be duplicative of other provisions of ASORCNA requiring registrants to register their schools and job sites. But there is nothing unusual about two provisions overlapping to ensure that certain actions are necessarily covered. *See, e.g.*, *Facebook, Inc. v. Duguid*, 592 U.S. 395, 407 n.7 (2021). And Alabama law prefers a plain-text interpretation that introduces superfluity over a reading that avoids superfluity by "mudd[ying] up the statute." *Ex parte Triad of Alabama*, 2024 WL 295247, at *5 (Ala. Jan. 26, 2024). Regardless, the overlap between the residency, school, and employment registration provisions under plaintiffs' interpretation of the aggregate-time list is

not as great as defendants imply. A registrant may be on campus or at a part-time job for less than four hours a day. In that situation, ASORCNA's other provisions impose registration duties and geographic limitations that the Residency Provision does not.

### 2. The unconstitutional applications of Section 11(a) substantially outweigh the constitutional ones

Properly interpreted, Section 11(a) bars registrants from spending four hours on three consecutive days or ten total days in a month at a given place within 2,000 feet of any school, childcare facility, or resident camp. The scope of this prohibition is breathtaking. As the district court recognized, it forecloses a "facially staggering" amount of First Amendment activity, including "visiting family, participating in worship services, attending political protests, accessing public libraries, and volunteering with nonprofits" for the times specified in the aggregate-time list. Doc.138 at 78. The district court correctly held Section 11(a) facially invalid, *id.* at 87, because these "unconstitutional applications substantially outweigh [Section 11(a)'s] constitutional ones," *Moody*, 144 S.Ct. at 2397. Indeed, in the district court, defendants did "not seriously dispute that the potential impermissible applications of section 11(a) and section 11(d), as properly construed, outweigh the permissible applications." Doc.138 at 84-85. Defendants still have no persuasive argument to the contrary.

a. Applications of Section 11(a) can be broken into three categories: (1) registrants "living in a house or apartment within 2,000 feet of a school or daycare," Br.25; (2) the aggregate-time limit's prohibitions on First Amendment activities like those above; and (3) its prohibitions on non-expressive activities like attending a three-day sporting event. Defendants argue (Br.26) that applications in the second category pale in comparison to the other two. This argument fails.

To start, defendants rely only on their say-so, not on evidence. Common sense shows why they are wrong. Every single time a registrant does not attend a political rally or cuts short time with family or at church, Section 11(a) unconstitutionally abridges that registrant's First Amendment rights. Such invalid applications will be numerous because of the plain terms of the aggregate-time list. In contrast, valid applications of Section 11(a) to bar registrants from residing close to children will be much less numerous because people establish new residences much less frequently than they attend religious, political, and family activities.

Nor can defendants rely on the third category—the aggregate-time list's application to non-expressive activities—to dilute Section 11(a)'s overbreadth. The fact that the aggregate time-list prohibits numerous non-expressive activities, such as attending sporting events that likewise have nothing to do with actually residing somewhere, is not part of any "plainly legitimate sweep," *Moody*, 144

S.Ct. at 2397.  These applications are not legitimate because they "operate[] on a fundamentally mistaken premise" that someone can establish a residence somewhere merely by spending four hours there on three consecutive days or ten total days in a month.  *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 966 (1984).  This principle from *Munson* is why the district court disregarded third-category applications.  Defendants' contention (Br.25 n.8) that the court simply "found them disagreeable" is incorrect.

  b.  Defendants fare no better with their argument (Br.28) that plaintiffs failed "to demonstrate overbreadth 'from actual fact,'" because the record does not show any registrant convicted for exceeding the aggregate-time list while engaging in expressive activity.  This argument misconstrues the legal standard and ignores clear evidence of threatened prosecution.

  To start, this Court has long held that "[t]he mere fact that [defendants have] not enforced [a] requirement … is not sufficient to remove [the relevant] language from … consideration."  *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1571 (11th Cir. 1993).  This is so because "[p]ersons who wish to [engage in the proscribed activity] may well be deterred from such activity … regardless of the lack of prior enforcement efforts."  *Id.*  In a similar vein, the Supreme Court has explained that the government's "promise[] to use [the statute] responsibly" cannot save an overbroad statute, because "the First Amendment … does not leave us at the mercy

of *noblesse oblige*." *Stevens*, 559 U.S. at 480. Under *Dimmitt* and *Stevens*, the absence of any on-point convictions, even when coupled with statements from law enforcement that a law will not be enforced in a certain way, does not defeat statutory overbreadth. As long as the share of a statute's applications infringing protected expression substantially outweighs its plainly legitimate sweep, the statute is substantially overbroad.

Defendants do not grapple with *Dimmitt* or *Stevens*. Instead, they repeatedly quote (*e.g.*, Br.16, 26, 28) language originating from *New York State Club Ass'n v. City of New York* ("*NYSCA*"), 487 U.S. 1 (1988), that a party bringing an overbreadth claim must demonstrate substantial overbreadth "in actual fact." But, as *NYSCA* shows, "actual fact" does not mean "history of arrests." In *NYSCA*, the plaintiff challenged on freedom-of-association grounds a state law forbidding private clubs that are "sufficiently public" and "commercial" in nature from excluding individuals based on protected characteristics. *Id.* at 5. The Court rejected the challenge because it was unable to "conclude that the Law threatens to undermine the associational or expressive purposes of any club." *Id.* at 14. Put differently, the Court was unsure whether any unconstitutional applications of the law actually existed. The phrase "from actual fact," as well as the Court's observation that "[n]o record was made" in the case, *id.*, *quoted in* Br.28, related to the Court's analysis of the antecedent question of what the law covered, not how

(if at all) it was enforced.  Here, the record shows innumerable examples of expressive activity foreclosed by Section 11(a).  *Supra* pp.8-11.[2]

If Section 11(a)'s capacious reach were not clear enough, the district court pointed to two pieces of evidence which suggest a very real likelihood that satisfying any of the aggregate-time list criteria would establish a residence.  The first is the Alabama Court of Civil Appeals opinion embracing plaintiffs' reading of the aggregate-time list.  Doc.138 at 33 n.15; *see supra* p.27.  The second is a brief the State filed in 2017 in a case challenging the Residency Provision (along with other ASORCNA provisions) under the *Ex Post Facto* Clause in which the State asserted the new definition of "reside" "gives concrete examples as to what constitutes habitual or systemic presence."  Doc.138 at 51 n.20; *see* Appellee/Cross-Appellant State Officials' Supplemental Response Brief, No. 15-10958, *McGuire v. Marshall*, 2017 WL 3474163, at *9 (11th Cir. Aug. 9, 2017). Defendants address neither the state-court opinion nor the State's 2017 brief.[3]

---

[2] The Supreme Court's observation that a criminal defendant alleging overbreadth "fail[ed] to identify a single prosecution for ostensibly protected expression" in *United States v. Hansen*, 599 U.S. 762, 782 (2023), does not save defendants' argument (Br.27).  The overbreadth claim in *Hansen* failed because the statute there, properly construed, did not reach expressive conduct, and the defendant's hypothetical examples fell outside the statute's scope.  599 U.S. at 781-782.

[3] For largely these same reasons, defendants' drive-by argument (Br.27 n.10) that plaintiffs lack standing fails.  Plaintiffs raising a pre-enforcement First Amendment challenge must show (1) that they have "'an intention to engage in a

## B.    Section 11(d) Is Substantially Overbroad

Unlike the district court, *see* Doc.138 at 72, defendants largely combined

their overbreadth analysis of Sections 11(a) and 11(d).  Section 11(d) forbids

(again with exceptions not relevant here) registrants from "resid[ing] or

conduct[ing] an overnight visit with" anyone under eighteen.  Ala. Code §15-20A-

11(d); *id.* §15-20A-4(13).  Section 11(d)'s prohibition on "resid[ing] with a minor"

incorporates the same definition of "reside" as Section 11(a) and is facially

overbroad for the same reasons explained in Part II.A.  But Section 11(d) also bars

overnight visits, regardless of the registrant's residence.  The Legislature's

---

course of conduct arguably affected with a constitutional interest,' (2) that [their]
conduct is 'arguably proscribed,' and (3) that [they are] subject to 'a credible threat
of enforcement.'"  *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119-1120
(11th Cir. 2022).  "When First Amendment protections are implicated, [this Court]
appl[ies] 'most loosely' the injury-in-fact requirement 'lest free speech be
chilled.'"  *Dana's Railroad Supply v. Attorney General*, 807 F.3d 1235, 1241 (11th
Cir. 2015).

The undisputed evidence that plaintiffs refrain from First Amendment
activities—including visiting church and family members and participating in
political rallies, for fear of violating the Residency Provision, *supra* pp.8-11—
easily satisfies this requirement.  Nor is it just plaintiffs' subjective fear.  Plaintiffs
have been told by law enforcement officers that attending church habitually could
lead to arrest.  *Supra* pp.8, 10-11.  The plain text of the aggregate-time list
proscribes the activities without qualification.  Especially when combined with
both a state-court decision and the State's own brief in 2017 construing the
Residency Provision in the same way as plaintiffs, the threat of prosecution is
credible, and plaintiffs' fear is objectively reasonable.

expansive definition of "overnight visit" thus renders Section 11(d) much broader than Section 11(a) and unconstitutionally overbroad on that independent ground.

ASORCNA defines "[o]vernight visit" as "[*a*]*ny* presence between the hours of 10:30 p.m. and 6:00 a.m." Ala. Code. §15-20A-4(14) (emphasis added). The district court correctly read this language, together with Section 11(d), to mean that the presence of a registrant and minor at the same place for any length of time between 10:30pm and 6:00am constitutes a prohibited overnight visit. In other words, Section 11(d) bars registrants from being anywhere with anyone under eighteen during those hours. In concrete terms, if a registrant wants to attend a nighttime political demonstration, the presence of high school students means he cannot. Or if a registrant wants to stay late at a family gathering, he cannot if any minors are present. As the district court explained, the categorical bar on being present with a minor for any amount of time between 10:30pm and 6:30am implicates "the entire spectrum of public forums, like town squares," attendance at church or political events, and intimate association with family. Doc.138 at 79-80; *see id*. at 82-83.

Defendants make only two arguments specific to Section 11(d). Both are new on appeal, and so should not be considered. *Akridge v. Alfa Insurance Cos.*, 93 F.4th 1181, 1199 (11th Cir. 2024). In any event, neither has merit. First, defendants assert (Br.23) that "the provision intertwines with residency." Section

11(d), however, nowhere says that an overnight visit is unlawful only if it occurs at the registrant's residence.  This Court itself affirmed a district court's revocation of supervised release for a Section 11(d) violation based on an overnight visit not at the registrant's house, but "at his girlfriend's."  *United States v. Washington*, 724 F.App'x 928, 929 (11th Cir. 2018).

Second, defendants argue (Br.23-24) that Section 11(d)'s categorical prohibition on overnight visits is cabined because a registrant must "conduct" a visit "knowingly" to be criminally liable.  Ala. Code §15-20A-11(i).  But defendants' own definition of "conduct" (Br.23) includes "tak[ing] part in" a visit, and Alabama law defines "knowingly" to require merely that the registrant be "aware … that the circumstance exists," Ala. Code §13A-2-2(2)—here, that a minor is present between 10:30pm and 6:30am.  At most, that saves a registrant from liability for "working an overnight shift at a gas station" (Br.24) if he *immediately leaves* once he notices the presence of any minor.  And defendants have no response to the fact that Section 11(d)'s expansive prohibition chills plaintiffs from engaging in countless protected First Amendment activities in the first place.  *Supra* pp.8-11.

C.     **Certification Is Unwarranted**

Alternatively, defendants urge (Br.32) certifying the Residency Provision's scope to the Alabama Supreme Court.  "[C]ertification is not 'automatic or

unthinking,' and '[this Court] use[s] much judgment, restraint and discretion in certifying' a question of state law." *Howard v. Kimley-Horn & Associates, Inc.*, 2021 WL 4452536, at *5 (11th Cir. Sept. 29, 2021) (citing *Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274-275 (5th Cir. 1976)). None of the relevant factors favor certification here.

The two "most important" factors—"the closeness of the question and the existence of sufficient sources of state law to allow a principled rather than conjectural conclusion," *id.*—both weigh decisively against certification. As explained, whether a registrant "resides" at a place if one of the criteria in the aggregate-time list is met is not a close question. The statute answers that question unambiguously, and defendants do not propose how (short of rewriting the statute) it could be interpreted differently. *Supra* p.31. This Court's practice is to deny certification where, as here, "there is no substantial doubt as to how the issue ... would be resolved under [state] law," *Redding v. Coloplast Corp.*, 104 F.4th 1302, 1313 (11th Cir. 2024).

The Alabama Court of Civil Appeals has also interpreted the aggregate-time list to mean what it says. *Supra* p.27. This Court's "rule is that, absent a decision from the state supreme court on an issue of state law, [it is] bound to follow decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue

differently." *Weiss v. City of Gainesville*, 462 F.App'x 898, 908 (11th Cir. 2012) (quoting *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002)). Defendants offer no such "persuasive indication." This Court denied certification in *Weiss* for that reason. It should do the same here.

Finally, any certification of "reside" will not avoid but merely delay adjudication of plaintiffs' challenge to Section 11(d)'s prohibition of "overnight visits." Defendants have never asked to certify "overnight visit," *see* Doc.93 at 1, 4-5, and scarcely dispute its meaning, Br.23-24. Instead, the parties' disagreement about Section 11(d) centers on its implications for the overbreadth analysis—a question of federal constitutional law not suitable for certification. Certifying part of the statutory analysis will ensure only one outcome: Plaintiffs' First Amendment claims will take longer to be resolved. But "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1286 (11th Cir. 2021) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). In light of the clear statutory language, state appellate authority, and risk of delay, the Court should reject defendants' fallback request.

## III. THE RESIDENCY PROVISION CANNOT BE CONSTITUTIONALLY APPLIED TO PLAINTIFFS

The district court correctly concluded that the Residency Provision is independently unconstitutional as applied to plaintiffs because it is not sufficiently

tailored to the government's legitimate interest in protecting children. Defendants seek reversal of that holding on procedural and substantive grounds. All fail.

### A.  Plaintiffs Adequately Pled Their As-Applied Claim

Doubtless because they made virtually no showing below that the Residency Provision is narrowly tailored, defendants spend most of their discussion of plaintiffs' as-applied challenge arguing that they lacked "fair notice" of it. Br.33; *see* Br.33-39. That is wrong on the law and the record.

To start, as-applied relief may always be considered in a facial challenge. As the Supreme Court has made clear, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect"; rather, "it goes to the breadth of the remedy …, not what must be pleaded in a complaint." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). Applying *Citizens United*, this Court accordingly held that a district court "correctly" considered an as-applied challenge even where the complaint exclusively raised a facial challenge. *AFSCME Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013). And it distinguished the rule defendants cite that complaints may not be amended "in a brief opposing summary judgment." *Id.* (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004), *quoted in* Br.36 n.17). As this Court explained, the plaintiff—in asserting that a law it had challenged facially was also unconstitutional as applied to its members—"was not stating a new claim, [but]

only clarifying the scope of its desired remedy." *Id.* *Citizens United* and *AFSCME* foreclose defendants' procedural argument.

Regardless, the operative complaint gave defendants ample notice of plaintiffs' as-applied challenge. Count I is titled, as defendants admit (Br.34-35), "Overbreadth – Facial *and As Applied* Challenge," and it expressly alleges that the Residency Provision "*lacks proper tailoring*" and is invalid "both facially *and as applied to Plaintiffs* due to [the statute's] overbreadth." Doc.88 at 59-60, ¶¶305-306 (emphases added). Defendants suggest (Br.36 n.16) that because "there is no such thing as an as-applied overbreadth claim," they could reasonably assume there was no as-applied claim. That does not follow. To the contrary, the explicit inclusion of both facial and as-applied challenges gave defendants notice of both claims. Plaintiffs also requested declaratory relief against the Residency Provision "both facially *and as applied*." Doc.88 at 66, ¶a (emphasis added). And they alleged extensive facts about how the Residency Provision affects them personally, including by "chill[ing]" their "access to streets, parks, schools, homes of family and friends, churches, vacation locations and public facilities," even though their qualifying offenses and later criminal histories do not support any conclusion they pose a danger to minors. *Id.* at 46, ¶250. That was more than sufficient to put defendants on notice.

43

Defendants erroneously claim (Br.34) inclusion of facial and as-applied relief in the same count made plaintiffs' complaint "an impermissible shotgun pleading," in violation of Federal Rules of Civil Procedure 8(a)(2) and 10(b). But dismissal under those rules is appropriate only if "it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015). "No such virtual impossibility exists in this case." *Id.*

As relevant here, Rule 8(a)(2) requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), while Rule 10(b) requires that "each claim *founded on a separate transaction or occurrence* … be stated in a separate count" "[i]f doing so would promote clarity," Fed. R. Civ. P. 10(b) (emphasis added). As the italicized language makes clear, a "complaint is not always required to contain a separate count" for each claim. *Weiland*, 792 F.3d at 1325 n.18. In *Weiland*, for example, this Court upheld a single count pleading violations of "Fourth, Fifth, and Eighth Amendment rights," reversing the district court's dismissal as an abuse of discretion. *Id.* at 1325 n.18; *see id.* at 1325-1326.

Plaintiffs' inclusion of facial and as-applied challenges in a single count was "informative enough to permit a court to readily determine" that the count "state[s] a claim upon which relief can be granted," *Weiland*, 792 F.3d at 1326; *see supra*

p.44. And it was permissible under Rule 10(b) because all of plaintiffs' First Amendment arguments stem from the same "transaction or occurrence"—namely, the Residency Provision's infringement of their rights to free speech, religious exercise, and intimate association.

In short, the claim that the Residency Provision is not narrowly tailored as to plaintiffs "has always been in this case," Doc.138 at 89 n.37, and both Supreme Court and Circuit precedent authorized the district court to consider the propriety of as-applied relief.[4]

### B.     The Residency Provision Fails Intermediate Scrutiny

In the district court, defendants dismissed plaintiffs' "exhaustive narrow tailoring discussion" as irrelevant, Doc.129 at 42 (citing Doc.125 at 79-91), and did "not, in large part, respond," Doc.138 at 89 n.37. They thereby forfeited the position that the Residency Provision satisfies intermediate scrutiny. *Supra* p.38. In any event, defendants have not carried their burden to show the requisite tailoring, and they offer no sound basis to disturb the district court's holding that the Residency Provision "fail[s] to satisfy the First Amendment under a traditional time, place, or manner analysis," Doc.138 at 90.

---

[4] Even if plaintiffs' complaint were a shotgun pleading—which it is not—the remedy would be for plaintiffs "to replead the case," *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018), not for this Court to "reverse[]" (Br.39) and direct entry of summary judgment to defendants.

### 1.    The district court applied the correct legal standard

In assessing the constitutionality of the Residency Provision's application to plaintiffs, the district court employed the long-standing test for content-neutral regulations on the time, place, or manner of speech. Doc.138 at 91-92 (citing *McCullen v. Coakley*, 573 U.S. 464, 486 (2014)). Under *McCullen*, to survive "intermediate scrutiny," time-place-manner restrictions "must be 'narrowly tailored to serve a significant government interest.'" 573 U.S. at 486. As this Court clarified in evaluating a law restricting adult-entertainment venues' hours of operation and square footage, time-place-manner restrictions apply to "the where or the when" of speaking. *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1365 (11th Cir. 1999). The Residency Provision restricts where, when, and for how long registrants can engage in speech, worship, and family gatherings; it thus "affect[s], but do[es] not directly regulate, the expressive conduct that is the basis of the plaintiffs' First Amendment challenges." *Id.* at 1364-1365.

Defendants agree "intermediate scrutiny" applies but argue (Br.40 & n.18) the district court was required—and failed—to apply a different articulation of that standard under which, they claim, the Residency Provision need only "further a 'substantial governmental interest' that is 'unrelated to the suppression of free expression.'" Br.40 (citing *Moody*, 144 S.Ct. at 2407, and *United States v. O'Brien*, 391 U.S. 367, 377 (1968)). That is doubly flawed. The *O'Brien* test

applies to laws directly regulating expressive conduct—not time-place-manner restrictions like the Residency Provision. And even if it applied, *McMullen* and *O'Brien* require the government to make the same showing of narrow tailoring.

a.      Defendants claim (Br.40 n.18) *O'Brien* controls because *Moody* "cites *O'Brien* as the articulation of intermediate scrutiny." The Supreme Court cited the *O'Brien* test in *Moody* because the laws there were not time-place-manner restrictions but directly regulated expressive conduct. As the Court explained, the laws at issue there "restrict[ed] the ability of social-media platforms to control whether and how third-party posts are presented to other users," thereby targeting the platforms' own "expressive choices." 144 S.Ct. at 2393, 2405.

By contrast, the Supreme Court itself has applied *McCullen* (not *O'Brien*) to restrictions like the Residency Provision on registered sex offenders' presence in a given forum. In articulating the applicable test in *Packingham*, the Court in fact quoted the very same language from *McCullen* on which the district court relied here. *See* 582 U.S. at 105-106 ("In order to survive intermediate scrutiny, a law must be 'narrowly tailored to serve a significant governmental interest.'"). While the forums in *Packingham* were "commonplace social media websites," *id.* at 106—rather than houses of worship, rallies, and family gatherings—the same "fundamental principle of the First Amendment … that all persons [must] have access to places where they can speak and listen," *id.* at 104, applies equally to the

Residency Provision. The Fourth Circuit has likewise applied *McCullen*'s framework to other restrictions on registered sex offenders' "ability … to access public streets, parks, and other public facilities." *Doe*, 842 F.3d at 845; *see id.* at 847 (citing *McCullen*).

b. In any event, *McCullen* and *O'Brien* "embody much the same standards." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991). Under *O'Brien*, to withstand intermediate scrutiny, regulations of expressive conduct must further "an important or substantial governmental interest" "unrelated to the suppression of free expression," and "the incidental restriction on alleged First Amendment freedoms [must be] no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377. For that reason, the Seventh Circuit in *Hodgkins* held that the choice between these two intermediate-scrutiny standards had "no real effect on the outcome of th[at] case," 355 F.3d at 1057, because both require that the law be "no more restrictive than necessary to further the governmental interest," *id.* at 1060 ("Whether we call it 'narrowly tailored' or 'no more burden-some than is essential' is of no moment."); *accord Fort Lauderdale Food*, 11 F.4th at 1292 ("These standards substantially overlap and yield the same result in this case.").

Defendants contend *O'Brien*'s tailoring requirement is met "so long as the neutral regulation promotes a substantial government interest that would be

achieved less effectively absent the regulation." Br.41 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). The Supreme Court, however, has clarified that this "does not mean … regulation[s] may burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). To the contrary, a law is unconstitutional if "a substantial portion of [its] burden on speech does not serve to advance its goals." *Id.* Defendants' suggestion (Br.57) that intermediate scrutiny permits additional advancement of a legitimate interest, no matter how much speech is unnecessarily abridged in the process, misreads both the Supreme Court's and this Court's cases. Indeed, while *Ward* itself was a time-place-manner case, the Supreme Court has applied the same gloss on *Albertini* to expressive-conduct regulations, explaining that "[n]arrow tailoring in this context requires … that the means chosen do not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 662 (1994) (citing both *O'Brien* and *Ward*); *see id.* at 668 (referring to "the narrow tailoring step of the *O'Brien* analysis"); *accord Fort Lauderdale Food*, 11 F.4th at 1294-1295.

## 2. The Residency Provision is not narrowly tailored

Under either the *McCullen* or the (correctly articulated) *O'Brien* test, the Residency Provision is inadequately tailored because it infringes on significantly

more speech than necessary to further the government's legitimate interest in protecting children.  Under both standards, the government "bears the burden of showing that the remedy adopted does not burden substantially more speech than is necessary to further [its] interests," *Turner Broadcasting*, 512 U.S. at 624, and "that alternative measures that burden substantially less speech would fail to achieve [those] interests," *McCullen*, 573 U.S. at 495.  Having failed even to "respond" to plaintiffs' tailoring arguments in the district court, *supra* p.45, defendants do not come close to carrying their burden on appeal.

The first sign of the Residency Provision's lack of tailoring is the restrictions' application to individuals convicted of any of hundreds of offenses, including many without child victims.  *Supra* p.4.  Courts across the country recognize that sex-offender restrictions are likely insufficiently tailored if they apply universally, regardless of the registrant's past conduct.  The Second Circuit, for instance, struck down a Connecticut law requiring that all registered sex offenders notify law enforcement when they registered a new email address because the requirement applied to all registrants, "including registrants who have never engaged in the sort of illicit online activity that the government seeks to deter."  *Cornelio v. Connecticut*, 32 F.4th 160, 166, 175 (2d Cir. 2022).  This Court employed similar reasoning in distinguishing *Packingham* and holding that a condition of supervised release restricting computer use could constitutionally be

applied to an offender who "used an electronic device" in the commission of his offense. *United States v. Bobal*, 981 F.3d 971, 977 (11th Cir. 2020). And in a factual context similar to this one, the Fourth Circuit struck down a North Carolina restriction on registered sex offenders that banned them from areas within a certain distance of school, childcare, and similar facilities because the restriction "applie[d] to all restricted sex offenders, not just those who pose a danger to minors or are likely to pose such a danger." *Doe*, 842 F.3d at 838, 845-847. The reasoning in *Cornelio* and *Doe* dictates the same result with respect to the Residency Provision here.

The facts of this case confirm the unconstitutional lack of nexus between the Residency Provision's means and ends. None of plaintiffs' predicate offenses involved children; KLL's conviction involved a sixteen-year-old girlfriend when he was nineteen. *Supra* pp.7-10. Nevertheless, the Residency Provision applies to plaintiffs and child rapists equally. In fact, the Residency Provision treats plaintiffs as a greater threat than someone who, "without a sexual motivation, kidnapped an eighteen-year-old girl or tortured a minor or murdered a minor or sold fentanyl-laden cocaine to minors." Doc.138 at 98 n.41. This disjunction does not reflect narrow tailoring.

The Residency Provision's application (with exceptions not relevant here) to registrants for life regardless of changed circumstances or low risk of recidivism,

*supra* p.4, further confirms the lack of tailoring. McGuire, JEB, and KLL pose little risk of recidivism, as evidenced by the fact that it has been over a decade (three decades in McGuire's and JEB's case) since their predicate convictions. *Supra* pp.7-10. Yet they still must abide by the Residency Provision, likely forever. By "leav[ing plaintiffs] without recourse to protect [their] First Amendment rights," the Residency Provision is inadequately tailored. *Bobal*, 981 F.3d at 977.

Tellingly, defendants identify no record evidence demonstrating that the Residency Provision does not abridge substantially more speech than necessary. Their sole attempt (Br.43) to carry their burden consists of quoting five passages from their expert's report. None explain why registrants who have never targeted children should be subject to the same restrictions as those who have. Indeed, the only passage that even addresses the Residency Provision speaks in general terms about "[r]esidency restrictions … limit[ing] opportunity structures where sexual offenders would have access to potential victims." Doc.120-27 at 45. It says nothing about defining "reside" so expansively as to render a church or rally a potential "residence." Nor does it justify defining "overnight visit" to restrict virtually any access to public forums between 10:30pm and 6:00am. And neither defendants nor their expert explains why residency restrictions must last for the

rest of a registrants' life, even if the registrant has gone decades without reoffending.

"Courts, law enforcement agencies, and scholars all have acknowledged that residency restrictions do not reduce recidivism and may actually increase the risk of reoffending." *Ortiz v. Breslin*, 142 S.Ct. 914, 916 (2022) (Sotomayor, J., concurring in denial of certiorari). Defendants' inability to adduce evidence supporting the breadth of the Residency Provision is therefore unsurprising. Indeed, plaintiffs' expert testified that "available research has not found" residency restrictions "hav[e] the intended effects," and on the contrary, "having a place to stay" is a "major contributor[] to desisting from crime." Doc.120-33 at 48-49. The district court thus correctly found that "Defendants' evidence fails to bring into genuine dispute" plaintiffs' contentions that the Residency Provision is not narrowly tailored to achieve the government's interest in protecting children. Doc.138 at 101, 104.[5]

---

[5] If this Court concludes that defendants have adduced sufficient evidence on this issue to survive summary judgment, it should remand for trial. When faced with cross-motions for summary judgment, the court "must methodically take each motion in turn and construe all the facts in favor of the non-movant for each." *Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile*, 83 F.4th 922, 926 (11th Cir. 2023). At a minimum, plaintiffs' expert report constitutes sufficient evidence to raise a genuine dispute of material fact as to whether the Residency Provision is adequately tailored.

## IV. THE DISTRICT COURT'S REMEDY WAS PROPER

Having determined that Sections 11(a) and (d) are substantially overbroad and inadequately tailored, the district court properly declared those provisions unconstitutional both facially and as applied to plaintiffs and enjoined their enforcement against plaintiffs. None of defendants' attacks on that relief is persuasive.

Defendants claim (Br.51) the district court's relief "went beyond its authority" by barring enforcement against non-parties. Facial relief, however, is the proper remedy for statutory overbreadth. A substantially overbroad law is "unconstitutional on its face" because "[t]he Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft*, 535 U.S. at 244. That is why the Seventh Circuit in *Hodgkins* directed "the district court to permanently enjoin" an overbroad curfew law "until such time as the State's legislature removes the chill that the statute places on the exercise of First Amendment rights." 355 F.3d at 1064-1065. That a "more targeted" law may be enforceable against non-parties (Br.51) does not change the propriety of facial relief for the existing law. The district court's choice of declaratory facial relief—which makes it "less intrusive," *Steffel v. Thompson*, 415 U.S. 452, 469 (1974)—was within its discretion and "properly" leaves to the Legislature "the task of drafting a narrower statute,"

*United States v. National Treasury Employees Union*, 513 U.S. 454, 479 (1995);

Doc.138 at 61.

Defendants suggest (Br.50) the district court should have invalidated only

the aggregate-time list, instead of all of Sections 11(a) and (d).  But the district

court explained why that was not feasible:  "[D]efining 'reside' as anywhere

someone is 'habitually or 'systematically present,' but not necessarily where they

spend the night, is vague and likely subject to arbitrary and discriminatory

enforcement in the absence of clarifying language, like the aggregate-time list."

Doc.138 at 62 n.25.  The court did not abuse its discretion in refusing to craft an

injunction that would violate the Constitution in multiple respects.  Defendants

ignore that reasoning and have thus forfeited any response.  *Sapuppo v. Allstate*

*Floridian Insurance Co.*, 739 F.3d 678, 683 (11th Cir. 2014).

Nor do the permanent-injunction factors (Br.46) suggest any abuse of

discretion.  "To obtain a permanent injunction, a plaintiff must show (1) that he has

suffered an irreparable injury; (2) that his remedies at law are inadequate; (3) that

the balance of hardships weighs in his favor; and (4) that a permanent injunction

would not disserve the public interest."  *Young Israel of Tampa, Inc. v.*

*Hillsborough Area Regional Transit Authority*, 89 F.4th 1337, 1351 (11th Cir.

2024).  Even assuming the same factors applied to the declaratory relief here, these

"requirements necessarily follow" from plaintiffs' success on the merits of their

constitutional claims. *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1283 (11th Cir. 2024)

To start, First Amendment injuries are inherently irreparable. *Id.*; *supra* p.41. "And since [plaintiffs have] suffered irreparable harm, [their] remedies at law were inadequate." *Barrett v. Walker County School District*, 872 F.3d 1209, 1229 (11th Cir. 2017). Meanwhile, the harm to defendants of not enforcing the Residency Provision is nonexistent "because the government has 'no legitimate interest' in enforcing an unconstitutional law." *Honeyfund.com*, 94 F.4th at 1283. And finally, "[t]he public interest is always served in promoting First Amendment values." *Barrett*, 872 F.3d at 1230.

Defendants do not explain how the district court, upon holding that the Residency Provision violates the First Amendment, could refrain from issuing relief "tailored to fit the nature and extent of the established [constitutional] violation." *Young Israel*, 89 F.4th at 1351. Instead, defendants claim (Br.48) the district court's order will "permit[]" "sexually violent predators or serial child molesters … to freely roam the communities of Alabama unchecked." That is obviously not true; other than the Residency Provision, every provision of ASORCNA—"the most comprehensive and debilitating sex-offender scheme in the nation," Doc.138 at 7—is untouched by the district court's order. Defendants cite no evidence of any materially increased risk to public safety.

Defendants' invocation of public safety at the remedial stage is nothing more than an attempt to relitigate the merits of plaintiffs' claims. The district court correctly held that the Residency Provision is overbroad and "burdens substantially more speech than needed to predictively protect society." Doc.138 at 100. The remedy for constitutional violations is to stop them. The district court did not abuse its remedial discretion in declaring Sections 11(a) and (d) unconstitutional and enjoining their enforcement against plaintiffs.

## CONCLUSION

The district court's judgment should be affirmed.

October 9, 2024

Respectfully submitted.

/s/ Kevin M. Lamb

J. MITCHELL MCGUIRE
SUSANNE E. CORDNER
MCGUIRE & ASSOCIATES, LLC
31 Clayton Street
Montgomery, AL  36104
(334) 517-1000

KEVIN M. LAMB
SAMUEL M. STRONGIN
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C.  20037
(202) 663-6000

*Counsel for Plaintiffs-Appellees*

JOSHUA M. FEINZIG*
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y.  10007
(212) 230-8800

PETER KALICKI
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

\* *Admitted to practice only in
Washington, D.C.  Supervised by
members of the firm who are members
of the New York bar.*

*Counsel for Plaintiff-Appellee Michael McGuire*

## CERTIFICATE OF COMPLIANCE

According to the word-count feature of the word-processing program with which it was prepared, the foregoing brief contains 12,864 words, excluding the portions exempted by Rules 27(d)(2) and 32(f). This brief also complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office in 14-point Times New Roman font.

/s/ Kevin M. Lamb
KEVIN M. LAMB

## CERTIFICATE OF SERVICE

I caused the foregoing to be electronically filed on October 9, 2024, using the Court's appellate CM/ECF system, which effected service on all counsel of record.

/s/ Kevin M. Lamb
KEVIN M. LAMB